## EX PARTE HUDGINGS, PETITIONER.

### ON PETITION FOR WRIT OF HABEAS CORPUS.

No. 27, Original. Argued December 9, 1918.—Decided April 14, 1919.

The basis of the power of the federal courts to punish summarily for contempt committed in their presence is to secure them from obstruction in the performance of their judicial duties; and to justify exertion of this power, the element of obstruction must clearly appear. P. 383.

Because perjury is punishable as a criminal offense is no reason why it may not also afford basis for punishment as a contempt. P. 382.

Perjury *in facie curiæ* is not of itself punishable as contempt apart from
its obstructive tendency. P. 383.

Hence, a District Court has no power to adjudge a witness guilty of
contempt solely because in the court's opinion he is wilfully refusing
to testify truthfully, and to confine him until he shall purge himself
by giving testimony which the court deems truthful. P. 384.

In such a case, *held* that the original jurisdiction of this court in *habeas
corpus* was properly invoked. *Id.*

Petitioner discharged.

THE case is stated in the opinion.

*Mr. Jesse Fuller, Jr.*, for petitioner.

*The Solicitor General* for respondent.

MR. CHIEF JUSTICE WHITE delivered the opinion of the
court.

After hearing and leave granted on a rule to show cause,
this petition for habeas corpus seeking the discharge of the
petitioner from custody under a commitment for contempt
was filed. The grounds for discharge were, that the court
had exceeded its jurisdiction by punishing as a contempt
an act which it had no power to so punish, and that even
if the act punished was susceptible of being treated as a
contempt the action of the court was arbitrary, beyond
the limits of any discretion possessed, and violative of
due process of law under the Fifth Amendment. Prior
to submission and after return and the hearing which en-
sued an order admitting to bail was made.

The duty to consider the case arises from the permis-
sion to file and therefore *prima facie* implies that it is of
such a character as to be an exception to the rule of pro-
cedure, that other available sources of judicial power may
not be passed by for the purpose of obtaining relief by
resort to the original jurisdiction of this court. *Ex parte*

*Royal*, 117 U. S. 254; *Riggins* v.· *United States*, 199 U. S. 547; *Glasgow* v..*Moyer*, 225 U. S. 420, 428; *Johnson* v. *Hoy*, 227 U. S. 245; *Jones* v. *Perkins*, 245 U. S. 390; *Re Mirzan*, 119 U. S. 584; *Re Huntington*, 137 U. S. 63. Whether, 'however, definitively the case is of such exceptional character must depend upon an analysis .of ·the merits, which we.now proceed to make upon the petition, the return, argument for the petitioner, suggestions by the United States, a statement by the Judge, and a transcript of the stenographer's notes· showing what transpired in the court below, made a part of the argument of the petitioner and in substance conceded by all parties to be the record.

In á trial which was proceeding, June 11, 1918, in the. court below, presided over by the Judge of the District .of Vermont assigned to the Eastern District of New York, the petitioner was recalled as a witness by the Government for the purpose of proving by his testimony the handwriting of MacMillan and Van Amburgh. On being shown the writings referred to, in answer to questions by the Government, he said that he believed, from having often seen the writing of the persons named, that the writings shown him were theirs, but that he could not so state from having seen MacMillan and Van Amburgh write because he could not recollect ever having seen them do so. The court thereupon pointedly questioned the witness on the subject of his recollection and, in view of his persistency in declaring that he could not swear from knowledge derived from a recollection of having seen Mac- Millan and Van Amburgh write or sign that the writings were theirs, stated to Government counsel that because of the evident unwillingness of the witness the widest latitude would be allowed the Government in its examination. This was availed of and an inquiry followed · covering a wide field as to the previous association of the witness with the parties in question, his employment in

the business in which they were engaged and other cir-
cumstances deemed to persuasively establish that his
connection with them had been such that his statement
that he could not remember having seen them write was
untrue.

The inquiries, however, made no change in the state-
ments of the witness, who persisted in saying: "I cannot
say that I can recall that I have ever seen him in the act
of writing. I would not say I have not, but I would not
say that I have." Finally the court interrupted the ex-
amination by saying:

"This witness is going to be committed for contempt
of court. The court is thoroughly satisfied, Mr. Witness,
that you are testifying falsely when you say that you can-
not recall of ever seeing Mr. MacMillan write, and this
has happened several times during this trial with other
witnesses, especially with your wife. . . .

"And it becomes the plain duty of the court to commit
you to jail, sir, for contempt, and before doing so, I think
it is the duty of the court to explain to you that the answer,
'I do not remember of ever having seen him write,' is
just as false, is just as much contempt of court if you have
seen him write, as it would be for you to say that you had
never seen him write, without using the expression, 'I
do not remember.'"

In the same direction the court said:

"I am not going to allow you to obstruct the course of
justice here, and if this nation has delegated power enough
to this court and I am very sure it has, to deal with you in
the manner proposed, I am going to do it."

Before the discharge of the witness from the stand an
order for contempt against him was made and he was com-
mitted to the custody of the marshal. On the same day
he pleaded not guilty to an indictment for perjury which
the grand jury had just presented and obtained an
order for release on bail which was inoperative because

he continued to be held under the commitment for contempt.

The record states that on July 8th, following, a *nunc pro tunc* order of commitment was spread upon the minutes in which the previous commitment was described as having been made for misbehaviour of the petitioner in the presence of the court when on the witness stand by wilfully refusing "to answer certain questions truthfully" concerning his having seen MacMillan and Van Amburgh write and sign. The new commitment directed that it should continue in force until the petitioner had purged himself of the contempt for which he was being punished.

That the contumacious refusal of a witness to testify may so directly obstruct a court in the performance of its duty as to justify punishment for contempt is so well settled as to need only statement. Despite some confusion caused by certain ambiguous forms of expression used by the court below in dealing with the subject, it is indisputable that the punishment for contempt was imposed solely because of the opinion of the court that the witness was wilfully refusing to testify truthfully, that is, was committing perjury.

Whether, then, power to punish for contempt exists in every case where a court is of the opinion that a witness is committing perjury, is the test we must here apply. Because perjury is a crime defined by law and one committing it may be tried and punished does not necessarily establish that when committed in the presence of a court it may not, when exceptional conditions so justify, be the subject-matter of a punishment for contempt. For an application of this doctrine to perjury, see *Berkson v. People,* 154 Illinois, 81; *In re Rosenberg,* 90 Wisconsin, 581; *Stockham v. French,* 1 Bing. 365; and see *In re Schulman,* 177 Fed. Rep. 191; *In re Steiner,* 195 Fed. Rep. 299; *In re Ulmer,* 208 Fed. Rep. 461; *United States v. Appel,*

211 Fed. Rep. 495. This being true, we must ascertain what is the essential ingredient in addition to the elements constituting perjury under the general law which must be found in perjury when committed in the presence of a court to bring about the exceptional conditions justifying punishment under both.

Existing within the limits of and sanctioned by the Constitution, the power to punish for contempt committed in the presence of the court is not controlled by the limitations of the Constitution as to modes of accusation and methods of trial generally safeguarding the rights of the citizen. This, however, expresses no purpose to exempt judicial authority from constitutional limitations, since its great and only purpose is to secure judicial authority from obstruction in the performance of its duties to the end that means appropriate for the preservation and enforcement of the Constitution may be secured. *Toledo Newspaper Co.* v. *United States,* 247 U. S. 402; *Marshall* v. *Gordon,* 243 U. S. 521.

An obstruction to the performance of judicial duty resulting from an act done in the presence of the court is, then, the characteristic upon which the power to punish for contempt must rest. This being true, it follows that the presence of that element must clearly be shown in every case where the power to punish for contempt is exerted—a principle which, applied to the subject in hand, exacts that in order to punish perjury in the presence of the court as a contempt there must be added to the essential elements of perjury under the general law the further element of obstruction to the court in the performance of its duty. As illustrative of this, see *United States* v. *Appel,* 211 Fed. Rep. 495. It is true that there are decided cases which treat perjury, without any other element, as adequate to sustain a punishment for contempt. But the mistake is, we think, evident, since it either overlooks or misconceives the essential characteris-

tic of the obstructive tendency underlying the contempt power, or mistakenly attributes a necessarily inherent obstructive effect to false swearing. If the conception were true, it would follow that when a court entertained the opinion that a witness was testifying untruthfully the power would result to impose a punishment for contempt with the object or purpose of exacting from the witness a character of testimony which the court would deem to be truthful; and thus it would come to pass that a potentiality of oppression and wrong would result and the freedom of the citizen when called as a witness in a court would be gravely imperiled.

Testing the power to make the commitment which is under consideration in this case by the principles thus stated, we are of opinion that the commitment was void for excess of power—a conclusion irresistibly following from the fact that the punishment was imposed for the supposed perjury alone without reference to any circumstance or condition giving to it an obstructive effect. Indeed, when the provision of the commitment directing that the punishment should continue to be enforced until the contempt, that is, the perjury, was purged, the impression necessarily arises that it was assumed that the power existed to hold the witness in confinement under the punishment until he consented to give a character of testimony which in the opinion of the court would not be perjured.

In view of the nature of the case, of the relation which the question which it involves bears generally to the power and duty of courts in the performance of their functions, of the dangerous effect on the liberty of the citizen when called upon as a witness in a court which might result if the erroneous doctrine upon which the order under review was based were not promptly corrected, we are of opinion that the case is an exception to the general rules of procedure to which we have at the outset

referred, and therefore that our duty exacts that we finally dispose of the questions in the proceeding for habeas corpus which is before us. It is therefore
>                    *Ordered that the petitioner be discharged.*

MR. JUSTICE PITNEY dissents.