916

## UNITED STATES ex rel. JOHNSON v. GOLDSTEIN.

### No. 9181.

Circuit Court of Appeals, Seventh Circuit.

Jan. 7, 1947.

Vincent O'Brien and John M. Baker, both of Chicago, Ill., for petitioner.

Arthur J. Goldberg, Carl Devoe, Abraham W. Brussell, and Leslie E. Salter, all of Chicago, Ill., for respondent.

Before SPARKS, MAJOR, and MINTON, Circuit Judges.

MAJOR, Circuit Judge.

This is a proceeding initiated by John E. Johnson on behalf of the United States in the form of a petition for a rule upon William Goldstein to show cause why he should not be adjudged in contempt of this court. The petition alleges an obstruction of justice by reason of perjury asserted to have been committed by Goldstein, and is predicated upon Sec. 385, Title 28 U.S. C.A., the material portion of which provides:

"Such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice."

The show cause rule issued and at the same time it was ordered that the Collector of Internal Revenue at Chicago make available certain records, documents and memoranda in his possession which, it is alleged, will furnish the proof of Goldstein's perjury.

A further order was entered appointing Vincent P. O'Brien and John M. Baker, two eminent and distinguished members of the Chicago Bar, as counsel to take charge of the proceedings and conduct the same on behalf of this court.

In response to the rule to show cause, Goldstein, by a motion to dismiss, challenges our jurisdiction. The government has moved that the order directed at the Collector of Internal Revenue be vacated on

the ground that the records, documents and memoranda in his possession are of a confidential nature and that their production would be inimical to the public interest.

■ While the jurisdictional challenge is approached from numerous angles, the real question arises from Goldstein's contention that the facts alleged in the petition are insufficient, (1) to show perjury and (2) to show an obstruction to the administration of justice. For the purpose of the instant motion we must accept all material allegations of fact alleged in the petition.

The alleged perjury consists of testimony by Goldstein in the form of affidavits filed in this court in one of the numerous proceedings in the much litigated case of United States v. Johnson. The petition in great detail relates the history of this litigation in connection with and as relevant to the alleged perjury committed by Goldstein in this court. The reported decisions in the Johnson case are referred to, and by reference made a part of the petition. 7 Cir., 123 F.2d 111; 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546; 7 Cir., 142 F.2d 588; 7 Cir., 149 F.2d 31; 327 U.S. 106, 66 S.Ct. 464. A reference to these decisions will disclose that this prolonged litigation has been due in the main to the persistent contention of Johnson that he was convicted upon the perjured testimony of Goldstein.

Particularly is this true as to the proceedings between June 7, 1943, when the Supreme Court affirmed the original conviction (319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546), and February 4, 1946, when that court affirmed the action of the trial court in denying Johnson's motion for new trial (327 U.S. 106, 66 S.Ct. 464, 465). In the last decision the Supreme Court emphasizes the long delay in the enforcement of the sentence imposed upon Johnson in face of the fact that it countenanced the proceedings which resulted in such delay by its failure in the first instance to send its unequivocal mandate direct to the District Court for execution. Instead, its mandate was sent to this court "without prejudice, however, to the consideration

and disposition by the United States Circuit Court of Appeals for the Seventh Circuit of any motion filed under Rule 2 (3) of the Criminal Appeals Rules [18 U.S. C.A following section 688]." While we did not consider this as a command, we did think it a plain intimation by the Supreme Court that the newly discovered evidence purporting to show Goldstein's perjury was regarded by it as of some consequence. More than that, after this court affirmed the judgment of the District Court in denying the motion for new trial predicated upon such proof, the defendant petitioned the Supreme Court for certiorari. While such petition was pending before that court, Johnson presented additional new evidence as further proof of Goldstein's perjury. The Supreme Court deferred consideration of the petition, which was later dismissed, so that Johnson might a second time present this further newly discovered evidence to this court. Again we thought that the action of the Supreme Court indicated that this additional evidence was not without merit; otherwise, what could have been the purpose of giving Johnson a further opportunity to delay the execution of his sentence? We recite what has happened in this respect for the purpose of showing that the delay of which the Supreme Court complains in its recent decision cannot be properly charged to this court.

We shall briefly relate the facts alleged in the petition, which it is asserted disclose a plan on the part of Goldstein culminating in the perjury complained of. Johnson, Skidmore and Goldstein (and others) were jointly indicted, charged with income tax evasion. Goldstein was a personal friend as well as counsel for Skidmore, and as a witness before the Grand Jury, in his effort to protect Skidmore, gave certain testimony which resulted in his indictment for perjury returned by the Grand Jury during February 1940. Johnson's trial commenced in August 1940, and on the date it was called for trial the charge against Goldstein and Skidmore was dismissed. Shortly thereafter Goldstein took the witness stand for the government and gave testimony from which stems the perjury now alleged to have

been committed in this court. Prior to the giving of this testimony Goldstein had given bond on the perjury charge, but afterward he was released upon his own recognizance. The perjury indictment against Goldstein remains untried although it has been pending in the District Court for more than six years.

In 1942, there was filed with the Chicago Bar Association, a duly designated agency of the Supreme Court of Illinois, a disbarment proceeding directed at Goldstein, a licensed attorney. That proceeding, for some strange reason undisclosed by the petition, remains undisposed of.

As the various court decisions will show and as the petition alleges, one of the material issues in the trial of Johnson, in fact the vital issue, was whether he was the owner of certain properties, including particularly that known as the Albany Park Bank Building, and certain escrow deposits, including a deposit of $7,500 with the State Bank and Trust Company of Evanston. The asserted perjured testimony of Goldstein with reference to the ownership of Johnson in these properties constitutes the basis for the numerous efforts on behalf of Johnson for a new trial. Twice the District Court has found that Goldstein did not commit perjury, and in each instance denied Johnson's motion for a new trial. The first denial was affirmed by this court on the theory that we were bound by the findings of the trial court. 7 Cir., 142 F.2d 588. The second denial of the motion for a new trial was reversed by this court, one judge dissenting. 7 Cir., 149 F.2d 31. A majority of this court concluded that the perjury of Goldstein was so thoroughly and completely established that the action of the trial court in denying the motion for a new trial was arbitrary and an abuse of discretion. The Supreme Court reversed our decision without a consideration, so far as the opinion discloses, of the merits of the controversy but upon the theory that we were without authority to review the action of the trial court. 327 U.S. 106, 66 S.Ct. 464.

The mandate of the Supreme Court, issued pursuant to its decision of June 7, 1943, containing its "without prejudice" provision, as heretofore related, was filed in this court July 6, 1943. On July 13, 1943, Johnson (and other defendants) filed in this court a motion that the case be remanded to the United States District Court to entertain a motion for a new trial. Said motion was predicated solely upon the alleged perjury of Goldstein committed at the trial, and in support thereof numerous exhibits and affidavits were submitted. The government submitted counter-affidavits including two affidavits by Goldstein, referred to in the petition as exhibits 8 and 9, which contain the alleged perjury committed in this court.

Exhibit 8 is an affidavit signed and sworn to before a Notary Public on September 8, 1943. It states, so far as here material, with reference to the income from the Albany Park Bank Building, that it "is being held by me until such time as I am released from the Internal Revenue Department which served me with a lien to hold all funds and property belonging to Wm. R. Johnson." As to the property itself, the affidavit states: "Theodore W. Goldstein holds title to the building in trust. The reason that title was not transferred to Wm. R. Johnson was that he requested me to let title remain in my son as he intended to organize a bank sometime in the future and did not want his name connected with it." Exhibit 9 is likewise an affidavit signed and sworn to before a Notary Public on September 10, 1943. Concerning the escrow deposit in the State Bank and Trust Company of Evanston, it states: "The $7,500.00 returned to me by the State Bank and Trust Company was not returned to Mr. Johnson or tendered to him because sometime in the early part of 1940 I was served with a notice by the Internal Revenue Collector's office to withhold all monies and property which I had in my possession for Mr. Wm. R. Johnson subject to their orders."

The petition alleges that the attention of the Collector of Internal Revenue, who had a lien against the property of Johnson, was called to the affidavits (exhibits 8 and 9) filed in this court by Goldstein to the effect that at the time of making such affidavits Goldstein was holding certain assets which belonged to Wm. R. Johnson because he was served with a notice of lien

by the Collector of Internal Revenue in the early part of 1940. Sometime in March 1946, it is alleged that the Collector made a demand upon Goldstein to turn over to him the said $7,500.00 deposit and that in response thereto Goldstein stated that he did not have the money, that he had given it to Skidmore. Upon being asked when he turned over the $7,500.00 to Skidmore, Goldstein replied that he gave said money to Skidmore at the time he withdrew it from the bank. (The record shows that the money was withdrawn from the bank October 30, 1940 and that Skidmore died in February 1944.)

The Collector, so it is alleged, further demanded that Goldstein turn over the rentals received by him from the Albany Park Bank Building which Goldstein in his affidavit of September 8, 1943 (exhibit 8) said belonged to Johnson but were being held by him because of the notice of lien served on him by the Collector of Internal Revenue early in 1940. In response thereto, Goldstein informed the Collector that the rental income had been dissipated, and upon being asked what he meant by the word dissipated, Goldstein stated that he had used part of the rents for the purpose of paying income taxes pursuant to the returns filed by his son Theodore, and that from time to time he had turned the rest over to Skidmore and continued to do so until the time of the latter's death. Upon being further asked what disposition he had made of the rents since the death of Skidmore, Goldstein became evasive and failed to give any definite answer.

From the statements so made by the said William Goldstein to the said deputy collectors, it is patent that he did not on September 10, 1943 have in his possession the said deposit of $7,500.00, but that he had some three years prior to the time of the making of such affidavits turned the money over to Skidmore. It is therefore plain that his affidavit in this court that he was holding this money for Johnson was false. It is also patent from what Goldstein told the deputy collectors that the rentals from the Albany Park Bank Building were being used to pay the income tax of his son Theodore and that the balance was being turned over to Skidmore. It is there-

fore plain that he was not holding the rentals from the Albany Park Bank Building for Johnson, as stated in his affidavit in this court, and that his statement in this respect was false.

Of course, what Goldstein stated to the deputies in the Collector's office is a matter which must be proven if this proceeding is to go to trial. On the motion to dismiss, however, we think that the allegation of the petition must be accepted as true. We think this notwithstanding the government's contention that the statements made by Goldstein to the deputies in the Collector's office are privileged and that the production of such testimony would be inimical to the public interest. We need not now consider this contention. It is sufficient to note that according to this petition the government has in its possession evidence constituting proof of Goldstein's perjury in this court. It is inconceivable to think or assume that the government will persist in its present contention that evidence of perjury can be concealed on the theory that it is either privileged or for the protection of the public interest. Moreover, we think if this proceeding reaches the stage where such evidence is material, a way will be found to require its production.

■ It is contended by Goldstein that no perjury can be ascribed to his testimony before this court for the reason that the question has been decided in his favor both by the District Court and by the Supreme Court. There is no merit to such contention for the reason that the perjury alleged to have been committed in this court is not the same as that alleged in the District Court. It is true that the perjury alleged in both courts stems from the same general subject matter, that is, Johnson's ownership of certain property. It may also be true that Goldstein's testimony in this court was merely corroborative of that given in the District Court. Nevertheless, the testimony in the two courts is separate and distinct. The finding of the District Court that perjury was not committed there is of no moment to the issue of whether it has been committed in this court. The Supreme Court neither discussed nor considered, so far as its opin-

920

ion discloses, the matter of Goldstein's perjury in the District Court. It predicated its decision on the proposition that the findings of the District Court in that respect were not subject to review. Obviously, the Supreme Court made no decision on the question of Goldstein's alleged perjury in this court.

Thus, for the purpose of the instant motion to dismiss, we are obliged to assume that Goldstein committed perjury in this court as alleged. The motion to dismiss, however, raises a more difficult question, and that is whether Goldstein's perjury was such "as to obstruct the administration of justice."

The petition sets forth a number of means employed by Goldstein in a carefully designed plan to protect Skidmore and to avoid the consequences to himself of the steps taken to effectuate said plan. While the means thus alleged to have been employed might and perhaps would be relevant to a trial on the charge of perjury for the purpose of showing motive, we are unable to discern how they have any bearing upon the question as to whether his perjury was such as "to obstruct the administration of justice." The only direct allegation in the petition as to the manner in which justice was obstructed in this court is:

"The perjury committed by the said William Goldstein through the affidavits filed by him in this court as aforesaid (Exhibits 8 and 9 hereto), was merely one of the means resorted to by him in pursuance of said general plan to obstruct the due administration of justice and had the effect of so doing in that due to his failure to tell the truth as to the ownership of said Albany Park Bank Building and as to the facts within his knowledge bearing upon the question of ownership thereof, this court in the first instance affirmed the judgment of the lower court denying the defendants' motion for new trial and thereupon, as hereinabove shown, the proceedings were greatly delayed by the actions required to be taken when the facts disclosed by the income tax returns aforesaid were ascertained. Your petitioner avers that by reason of the promises, the said actions of William Goldstein in giving the false testimony contained in Exhibits 8 and 9 hereto and in failing to disclose the real facts within his knowledge in respect of the ownership of said deposit of $7,500.-00 and of the Albany Park Bank Building for the purpose and with the effect aforesaid constituted a criminal contempt of this court within the meaning of Section 268 of the Judicial Code, 28 U.S.C.A. Sec. 385."

The question as to whether the allegations of the petition are sufficient to show an obstruction of justice divides itself into two categories, legal and factual. As to the legal phase of the situation, the law appears to have been definitely established by four recent decisions of the Supreme Court. In Re Michael, 326 U.S. 224, 66 S. Ct. 78; Nye v. United States, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172; Clark v. United States, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993, and Ex Parte Hudgings, 249 U.S. 378, 39 S.Ct. 337, 63 L.Ed. 656, 11 A.L.R. 333. We have read and reread these cases, and notwithstanding counsel's valiant effort to distinguish them, we are of the view that they point unerringly to the conclusion as a matter of law that Goldstein's perjury did not amount to an obstruction to the administration of justice in this court. In the Clark case, supra, the court stated (289 U.S. page 11, 53 S.Ct. 468):

"The books propound the question whether perjury is contempt, and answer it with nice distinctions. Perjury by a witness has been thought to be not enough where the obstruction to judicial power is only that inherent in the wrong of testifying falsely. Ex parte Hudgings, supra. For offenses of that order the remedy by indictment is appropriate and adequate. On the other hand, obstruction to judicial power will not lose the quality of contempt though one of its aggravations be the commission of perjury."

In the instant situation, there appears to be no escape from the idea that any interference with the judicial power of this court was only that "inherent in the wrong of testifying falsely." In other words, the perjury alleged is not merely one of the aggravations of the contempt charged but is the basis or foundation therefor.

In the Hudgings case, supra, the court spoke thus (249 U.S. p. 383, 39 S.Ct. 340):

"It is true that there are decided cases which treat perjury, without any other element, as adequate to sustain a punishment for contempt. But the mistake is, we think, evident, since it either overlooks or misconceives the essential characteristic of the obstructive tendency underlying the contempt power, or mistakenly attributes a necessarily inherent obstructive effect to false swearing."

Again, there seems no room for doubt but that the obstruction asserted is not merely an attribute of the false swearing but that it is the direct result thereof.

In the Michael case, supra, the limitation on the power of the court to punish for contempt has perhaps been even more emphatically emphasized. The court had before it a situation in which the lower courts had found and concluded that false testimony given before the Grand Jury tended to block the inquiry and consequently "an obstruction of the administration of justice" within the meaning of Sec. 268 of the Judicial Code so as to subject petitioner to the District Court's power to punish for contempt. The Supreme Court in reversing the conviction stated (326 U.S. p. 227, 66 S.Ct. 80):

"All perjured relevant testimony is at war with justice, since it may produce a judgment not resting on truth. Therefore it cannot be denied that it tends to defeat the sole ultimate objective of a trial. It need not necessarily, however, obstruct or halt the judicial process. For the function of trial is to sift the truth from a mass of contradictory evidence, and to do so the fact-finding tribunal must hear both truthful and false witnesses."

From this language we understand that even though perjured testimony may defeat "the sole ultimate objective of a trial," it does not necessarily "obstruct or halt the judicial process." The court further stated (326 U.S. p. 228, 66 S.Ct. 80):

"Of course the mere fact that false swearing is an incident to the obstruction charged does not immunize the culprit from contempt proceedings. * * * Here there

was, at best, no element except perjury 'clearly shown.' "

Thus it appears to have been definitely settled that an obstruction to the administration of justice cannot be produced solely by perjured testimony even though such testimony may defeat the ultimate objective of a trial.

Moreover, we entertain the most serious doubt, even from a factual standpoint, as to whether Goldstein's perjured testimony amounted to an obstruction to the administration of justice in this court. The record discloses that this court acted promptly in all proceedings wherein Goldstein's affidavits were involved. It is also plain that no action or decision of this court would have been different had Goldstein told the truth. In other words, we were not deceived or misled in any manner by his false affidavits; in fact, we recognized them as false. In United States v. Johnson, 7 Cir., 149 F.2d 31, we reviewed at length the evidence in support of our conclusion that his testimony was false. After reviewing the testimony relative to Goldstein's affidavit that he was holding for Johnson the rentals from the Albany Park Bank Building because of a notice served upon him by the Internal Revenue Department, this court stated (page 39):

"Taking all of these things together, we have a strong and abiding conviction that Goldstein's testimony concerning the Albany Park Bank Building was false."

After reviewing the testimony relative to Goldstein's affidavit that the $7,-500.00 withdrawn from the Evanston bank was being held by him for Johnson because of a notice served by the Internal Revenue Department, we stated (page 40):

"These facts and circumstances persuasively point to the falsity of Goldstein's trial testimony that these deposits were the property of Johnson."

To put it bluntly, this court recognized Goldstein as a perjurer, treated his affidavits accordingly and based our decision upon this very premise. Under these circumstances, we do not think it can be said

.that his false testimony interfered with or obstructed the administration of justice in this court. The production of the proof alleged to be in the possession of the Collector of Internal Revenue could only be cumulative to that which we have heretofore considered. In other words, it could only serve as further proof in a matter which, so far as this court is concerned, has been thoroughly considered and adjudicated.

The motion to dismiss the proceedings and to quash the rule to show cause is allowed. The motion to vacate the order directing the Collector of Internal Revenue to produce certain documents is likewise allowed.