(December 29, 1952.)

∎

In the Matter of the GRAND JURY OF WESTCHESTER COUNTY. ANTHONY D'AMORE, Appellant; THE PEOPLE OF THE STATE OF NEW YORK, Respondent.

NOLAN, P. J. (dissenting). On February 15, 1947, police officials in the city of Mount Vernon conducted a raid on a house at 27 Oneida Avenue, Mount Vernon, in Westchester County, and there found one Edmund Funai and one Charles Pandolfo, together with records of bets on horse races, telephones and other paraphernalia usually employed in book-making and four small ledgers which contained accounts of moneys owed to the book-maker by various persons, or favorable balances owed by the book-maker to customers or other book-makers with whom business was done, and also a record of certain expenses. On March 10, 1947, the two persons found on the premises were convicted of the crime of book-making. Evidence was presented by witnesses to the May, 1951, Grand Jury, impaneled in Westchester County, which was then investigating alleged activities of gamblers and public officials in that county, that book-making had been carried on for many months on the premises prior to February 15, 1947, and that the entries in the four ledgers were made at the direction of appellant Anthony D'Amore. In October, 1951, and thereafter, appellant appeared before the Grand Jury and was given immunity. He admitted that these ledgers represented records of accounts and expenses made by him or at his direction. Most of the entries obviously related to the accounts of persons who bet with appellant and he demonstrated familiarity with such accounts and a knowledge of the identity of the bettors and of other book-makers with whom business was done. There were, however, other specific items in the accounts, and as to those items the answers of the witness have been held to be evasive, incredible and contemptuous of the Grand Jury and of the court. Those entries, for the most part, involved the use of the word "Ice". The testimony of experts, called as witnesses before the Grand Jury, was to the effect that that term meant payments to police or public officials for protection. Testimony was also given by the two convicted book-makers that the word "Ice" could have that meaning. Appellant, however, categorically denied that he had used the word to indicate or conceal such payments, and also denied that he had paid any money to public officials, to police officers or to anyone for protection of his illegal operations. He testified that the entries in question represented payments to various persons who rendered services to him at race tracks and other places, and that, for the most part, he could not identify the persons to whom such payments had been made. The entries concerning which he was questioned involved transactions which took place approximately five years before appellant was called before the Grand Jury. Appellant did not flatly refuse to answer any question propounded. It has been held, however, that his testimony was so improbable and evasive as to constitute a refusal to answer, and he has been adjudged in contempt accordingly.

It may be, as the Grand Jury, the Trial Term and the majority of this court have concluded, that appellant committed perjury before the Grand Jury. Generally speaking, however, false swearing does not constitute a criminal or a civil contempt. No statute so provides, either expressly or by reasonable

implication. On the bare issue of perjury appellant was entitled to a trial by jury under the safeguards of the criminal law. (N. Y. Const., art. I, § 2; *Matter of Foster* v. *Hastings,* 263 N. Y. 311.) It is only when there is added to the essential elements of perjury under the general law the further element of obstruction to the court in the performance of its duty that perjury, committed in the presence of the court, may be punished as a contempt. (*Ex Parte Hudgings,* 249 U. S. 378.)

When the witness refuses to answer or when it plainly appears that the witness denies knowledge or recollection of a fact, obviously to evade an answer as to matters within his recollection, the court may refuse to aid in a mere subterfuge and may compel an answer. (*Matter of Foster* v. *Hastings, supra.*) If the conduct of the witness shows, beyond any doubt whatever, that he is refusing to tell what he knows, he is in contempt, but the power to punish for contempt must not be used to punish perjury. The proper test is whether on its mere face, and without inquiry collaterally, the testimony is not a bona fide effort to answer questions at all. (*United States* v. *Appel,* 211 F. 495.)

When there is an issue as to the falsity of the testimony, the conflicting evidence should not be passed upon in a contempt proceeding, but should be decided in a criminal action, where the contemner is entitled to a jury trial. Under such circumstances sound public policy requires that the offender be left to the criminal law. (*Matter of Finkel* v. *McCook,* 247 App. Div. 57, affd. 271 N. Y. 636.) If this were not so, " it would follow that when a court entertained the opinion that a witness was testifying untruthfully the power would result to impose a punishment for contempt with the object or purpose of exacting from the witness a character of testimony which the court would deem to be truthful; and thus it would come to pass that a potentiality of oppression and wrong would result and the freedom of the citizen when called as a witness in a court would be gravely imperiled." (*Ex Parte Hudgings, supra,* p. 384.)

Here the Grand Jury and the learned Justice at Trial Term decided, on the testimony of appellant, and the conflicting testimony of others, that appellant had falsely denied knowledge of matters under inquiry, to avoid disclosure of the true facts and to obstruct further investigation. The same conclusion has been reached in this court on consideration of appellant's testimony alone, in spite of his categorical denials of payment of bribes, and of an intent to conceal such payments or to evade further questioning by his statement that he was unable to recall the details of transactions which took place, or to amplify entries in his books which were made five years before. The conclusion reached may be reasonable inference from the record. It is, however, not a necessary inference, and the issue presented should be decided in the manner and in the forum provided for the punishment of offenses against the criminal law, and not in a proceeding to punish for a criminal contempt.

The order should be reversed and the proceeding dismissed.

Carswell, Johnston and Adel, JJ., concur in decision; Nolan, P. J., dissents and votes to reverse the order and to dismiss the proceeding, in an opinion in which Wenzel, J., concurs.

Order affirmed.