FRANCES NUSBAUM, PLAINTIFF, v. NEWARK MORNING LEDGER CO., ET AL., DEFENDANTS-RESPONDENTS.

HERBERT LERNER AND IDA ROCKLIN (WITNESSES ON DEPOSITIONS), APPELLANTS.

Argued October 11, 1960—Decided November 7, 1960.

*Mr. Solomon Golat* argued the cause for appellants (*Messrs. Talisman & Golat,* attorneys).

*Mr. Harold Krieger* argued the cause for defendants-respondents (*Messrs. Krieger & Chodash,* attorneys.)

The opinion of the court was delivered by

FRANCIS, J. Appellants, Herbert Lerner and Ida Rocklin, who are not parties to this action, were subpoenaed as witnesses by defendants during the course of pretrial discovery

proceedings. While being examined by defense counsel each of them refused to answer certain questions. The refusal was based upon privileges claimed to exist under the *Federal Constitution* and *N. J. S.* 2*A* :81–5. Additionally, as to some of the questions, they asserted lack of memory of the subject matter. On application to the Superior Court, Law Division, an order was entered directing that answers be given to 34 questions, three of which had been put to Mrs. Rocklin and 31 to Lerner. Leave to appeal therefrom was granted by the Appellate Division and we certified the matter on our own motion prior to argument there.

The plaintiff Frances Nusbaum sued defendant Newark Morning Ledger Co. and some of its officers and employees, alleging that she had been libeled by a series of articles appearing in the Ledger's newspaper. The complaint alleges in substance that the articles charged her with being a member of the Communist Party or a knowing associate of members of such party, or a sympathizer with the doctrines and objectives of the party. The articles (according to the complaint) center about a meeting, alleged to be a Communist Party meeting, held in the home of a resident of the Town of Maplewood, New Jersey, the purpose of which allegedly was to consider and devise means of impeding and disparaging hearings which were about to be conducted by the Congressional Committee investigating Un-American activities.

Defendants' answer asserted, among other things:

"[t]he said publications to the extent of their relation of items of fact are true in substance and in fact, and to the extent that they represent comment upon the facts are fair comment upon the conduct of the plaintiff in her capacity as a participant in said meeting and subsequent affairs."

Also that:

"Whatever good name, fame and reputation plaintiff enjoyed or still enjoys in the community in which she resides was voluntarily jeopardized by her association and her identification with persons of known Communist affiliations and sympathies, and in doing so gave aid and comfort to their purposes and objectives, thereby con-

senting to publication of fair comment and criticism relating to her connection with these persons in participating with them in the alleged meeting, and is therefore barred from recovery for the publications and expressions of opinions."

After issue was joined, defendants undertook extensive pretrial discovery in aid of their defense. Appellants were among the persons whose depositions were taken. It seems obvious from the interrogation that the purpose was to ascertain whether they and Mrs. Nusbaum were present at the meeting referred to in the newspaper articles, if Mrs. Rocklin and Lerner were members of the Communist Party, whether they associated with named persons known or suspected or alleged to be Party members or sympathizers, whether certain persons concededly present at the designated meeting were Party members or known or alleged to be such members or sympathizers, and whether the persons present at the meeting agreed to engage and did engage in activities intended to be disruptive of or to thwart the Congressional Committee hearings. In that connection the questions which the witnesses were placed under the mandate of the Law Division to answer may be divided into three categories: (1) personal membership in the Communist Party, (2) acquaintance or association with named persons, known or charged with being Party members or sympathizers, and (3) questions which they failed to answer because of asserted lack of recollection.

In this State broad and liberal trial preparation is strongly favored, to the end that causes may be fully and fairly presented and surprise avoided. But it is not without legitimate and necessary boundaries. *R. R.* 4:16–2 provides that:

"* * * the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party * * *."

For present purposes the controlling words are "not privileged." They preclude inquiry into matters which qualify as privileged.

It is not necessary to discourse upon the full connotation of the privilege contemplated by the rule. Here the witnesses relied upon the protection against self-incrimination under the *Fifth Amendment* of the *United States Constitution* and the statute cited above. As the Chief Justice pointed out in *State v. DeCola*, 33 *N. J.* 335 (1960), that privilege does not appear in the *New Jersey Constitution* and we need not pursue the arguable question of whether the *Fifth Amendment* of the federal organic law is made applicable to the states by virtue of the *Fourteenth Amendment*. See the dissents in *Adamson v. People of State of California*, 332 *U. S.* 46, 68, 67 *S. Ct.* 1672, 91 *L. Ed.* 1903 (1946); *Hoag v. State of New Jersey*, 356 *U. S.* 464, 477, 78 *S. Ct.* 829, 2 *L. Ed.* 2d 913 (1958); *Ciucci v. State of Illinois*, 356 *U. S.* 571, 575, 78 *S. Ct.* 839, 2 *L. Ed.* 2d 983 (1958); and see *Laba v. Newark Board of Education*, 23 *N. J.* 364, 389 (1957). In this State, however, at an early point in its history the safeguard became imbedded in the common law and now is protected by statute. *N. J. S. A.* 2A:81–5, which established the privilege legislatively and upon which appellants relied, was repealed by *L.* 1960, *c.* 52, *N. J. S. A.* 2A:84A–1 to 49. The latter enactment, which now must be applied in this controversy, adopted certain rules of evidence and broadened the scope of the pre-existing protection against self-incrimination. Rule 25 provides:

"* * * [E]very natural person has a right to refuse to disclose in an action * * * any matter that will incriminate him or expose him to a penalty or a forfeiture of his estate * * *." *Article* II, *section* 19.

Under Rule 24 a matter which will incriminate is defined as that which will constitute (a) an element of a crime against "this State or another State or the United States, or (b) is a circumstance which with other circumstances would be a basis for a reasonable inference of the commission of such a crime, or (c) is a clue to the discovery of a matter which is within clauses (a) or (b) * * *." *Article* II,

*section* 18. The section adds a proviso that the matters described will not be held to incriminate if it clearly appears that the witness has no reasonable cause to apprehend a criminal prosecution.

Prior to the appearance of the 1960 statute the protection afforded a witness against self-incrimination related only to disclosure of crimes against this State. *Report of the* [Legislative] *Commission to Study the Improvement of the Law of Evidence, p.* 29 (1956). Now the privilege protects against revelation of violation of the criminal law of any state or the national sovereignty. Moreover, the comprehensive definition of incriminatory matter adopted by the Legislature was taken from the cited Report, *page* 29, which acknowledges its source as the United States Supreme Court in *United States v. Hoffman,* 341 *U. S.* 479, 71 *S. Ct.* 814, 95 *L. Ed.* 1118 (1951). Although the *Hoffman* case was decided in 1951 the connotation expressed therein was not new. It is traceable to the early jurisprudence of our country. For example, over 150 years ago Chief Justice Marshall, in the trial of Aaron Burr, said:

"Many links frequently compose that chain of testimony which is necessary to convict any individual of a crime. It appears to the court to be the true sense of the rule that no witness is compellable to furnish any one of them against himself." *United States v. Burr,* 25 *Fed. Cas.* 38, at *p.* 40, *F. Cas.* ‡14692e (1807).

Accordingly, in order to reach a decision in this case as to the right of the witnesses to refuse to answer questions in categories (1) and (2) set forth above, it is only necessary to consider whether the matter inquired about constitutes an element of a crime against the United States, or a circumstance which with other circumstances would be a basis for a reasonable inference of the commission of such a crime, or a clue to the discovery of such a crime or of such a circumstance.

■ The right of a witness to rely on the privilege against self-incrimination as a basis for his declination to submit to interrogation relating to membership in the Communist Party

is no longer open to question. *Blau v. United States,* 340 *U. S.* 159, 71 *S. Ct.* 223, 95 *L. Ed.* 170 (1950); see comment on *Blau* in *Rogers v. United States,* 340 *U. S.* 367, at *p.* 372, 71 *S. Ct.* 438 (1951); *Brunner v. United States,* 343 *U. S.* 918, 72 *S. Ct.* 674, 96 *L. Ed.* 1332 (1952), reversing 190 *F. 2d* 167 (9 *Cir.* 1951); *Quinn v. United States,* 349 *U. S.* 155, 75 *S. Ct.* 668, 99 *L. Ed.* 964 (1955); *Emspak v. United States,* 349 *U. S.* 190, 199, 75 *S. Ct.* 687, 99 *L. Ed.* 997 (1955); Annotation 100 *L. Ed.* 661 (1955); Annotation 19 *A. L. R. 2d* 388 (1951). The same bar may be raised as to inquiry concerning his acquaintance or association with persons known as or charged with being members of or affiliated with that Party. *Brunner, supra; Emspak, supra; Alexander v. United States,* 181 *F. 2d* 480 (9 *Cir.* 1950); *Kasinowitz v. United States,* 181 *F. 2d* 632 (9 *Cir.* 1950); *Jackins v. United States,* 231 *F. 2d* 405 (9 *Cir.* 1956). The reason for the principle is that answers to such questions could well furnish a link in the chain of evidence needed to prosecute appellants for violation of or conspiracy to violate the Smith Act, 18 *U. S. C. A.* § 2385, which makes it a crime to organize, help or attempt to organize any society, group or assembly of persons who teach, advocate or encourage the overthrow or destruction of the government of the United States by force or violence; or to be or become a member of, or affiliated with, any such society, group or assembly, knowing its purposes.

Thus it is apparent that appellants' plea of privilege against incrimination when asked about membership in the Communist Party (the aims of which in relation to possible violation of the Smith Act were discussed in *Dennis v. United States,* 341 *U. S.* 494, 71 *S. Ct.* 857, 95 *L. Ed.* 1137 (1951)) is proper under *L.* 1960, *c.* 52. Such questions under the view expressed by the United States Supreme Court in the cases cited clearly give reasonable cause to apprehend a criminal prosecution by the federal authorities.

▉ Resort to the privilege with respect to acquaintance with the named persons and as to membership in the Civil

Rights Congress is more difficult to evaluate if the questions are considered in isolation. In the framework of the examination, however, it is plain that the persons referred to were considered by the examiner to be members of the Communist Party, or associates or affiliates of members, or Communist sympathizers. In fact, the record reveals specifically that some of them had been members of the Party and others had been charged with such membership before the Congressional Un-American Activities Committee. The Civil Rights Congress likewise had been referred to as a Party organ. See also, *Emspak v. United States, supra,* 349 *U. S.,* at *p.* 193, 75 *S. Ct.,* at *p.* 689. Accordingly, answers might be refused in reliance upon the privilege. Obviously, under the federal cases it does not clearly appear, as Rule 24 of the 1960 act requires, that the witnesses have no reasonable cause to fear prosecution. As the court said in *Emspak v. United States, supra*:

"To reveal knowledge about the named individuals—all of them having been previously charged with Communist affiliations—could well have furnished 'a link in the chain' of evidence needed to prosecute petitioner for a federal crime, * * *." 349 *U. S.,* at *p.* 200, 75 *S. Ct.,* at *p.* 693.

And see, *Alexander v. United States, supra; Kasinowitz v. United States, supra; Jackins v. United States, supra; Starkovich v. United States,* 231 *F.* 2d 411 (9 *Cir.* 1956).

Finally, we come to the portion of the Law Division directive relating to questions which appellants answered at the deposition taking by saying they could not recall. Such an order would be proper only when it appears beyond any reasonable doubt that the statement of lack of recollection was willfully false and a deliberate effort to evade a true and responsive answer to the questions. *United States v. Appel,* 211 *F.* 495 (*S. D. N. Y.* 1913); *Steingut v. Imrie,* 270 *App. Div.* 34, 58 *N. Y. S.* 2d 775 (*App. Div.* 1945). To jail a person who honestly cannot remember a particular fact that happened some years earlier and to confine him

there until he purges himself of contempt would have a strong tendency to subvert justice rather than to attain its ends. The urge of the contemnor to supply any kind of testimony satisfactory to the committing judge so as to be able to use the key to his cell which the court had figuratively placed in his pocket might well be compelling. See *Ex parte Hudgins,* 249 *U. S.* 378, 39 *S. Ct.* 337, 63 *L. Ed.* 656 (1919) ; *Loubriel v. United States,* 9 *F. 2d* 807, 809 (2 *Cir.* 1926).

From our own study of the rather wide ranging interrogation of these witnesses, we are not at all convinced that they were guilty of willful evasion in pleading failure of memory as to the specific matters covered by the questions which evoked the mandate to answer. As the New York Court of Appeals remarked in a similar situation in *People ex rel. Falk v. Sheriff of New York County,* 258 *N. Y.* 437, 180 *N. E.* 110, 111 (1932), "Upon the record now before us, the untruthfulness of the answer may be a possible inference, but a necessary one it certainly is not." Under the circumstances the order in this respect also must fall.

Various other issues were raised by the briefs of the parties to the appeal. In view of the conclusion reached, as outlined above, we find it unnecessary to discuss them.

The length of the plaintiff's complaint, 128 pages, cannot escape notice; nor can the answer of the defendants with its 19 separate defenses, some of which, particularly those purporting to deal with the issues of truth and fair comment, are rather ambiguously stated. In our judgment, the case is one requiring a full and careful pretrial conference at the earliest possible time. At such conference the plaintiff should be prepared to state, and should be required to state, precisely her claim as to each libel sued on and all issues she expects to advance at the trial with respect to that libel. The defendants likewise should address themselves to their answer in the same fashion to the end that the resulting pretrial order may furnish a specific guide to the ultimate trial.

The order of the Law Division under review is reversed.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.