**PARMELEE TRANSPORTATION COMPANY, a Delaware corporation, Plaintiff,**

v.

**John L. KEESHIN et al., Defendants.**
**In the matter of criminal contempt of Thomas C. McCONNELL, Respondent-Appellant.**

**No. 13175.**

United States Court of Appeals Seventh Circuit.

July 6, 1961.

Rehearing Denied Oct. 5, 1961.

See also 7 Cir., 292 F.2d 806.

Thomas C. McConnell, Chicago, Ill., pro se.

James P. O'Brien, U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before DUFFY, SCHNACKENBERG and CASTLE, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Thomas C. McConnell, respondent, has appealed from an order of the district court entered by Judge Julius H. Miner thereof, on June 30, 1960, D.C., 186 F. Supp. 533, adjudging him guilty of criminal contempt and sentencing him to confinement for a period of ten days on each of three specifications described in said contempt order, said sentences to run concurrently. The alleged acts of contempt occurred in connection with the trial of the case of Parmelee v. Keeshin et al.[1]

1. Specification 5 reads as follows:

"On April 21, 1960, prior to the selection of a jury, although Thomas C. McConnell, by his own statement, had read the transcript of the previous hearing in the cause at which the Court of its own motion suggested that consideration be given to separation of the issue of public injury for trial, and although no such suggestion or motion had been made by any attorney for any defendant at any hearing in the case, Mr. McConnell stated as follows:

" 'This should be a forum where we could have that lawsuit tried without being hemmed in and penned

[1]. An appeal in this case was decided in this court, as case No. 13160, on June 30, 1961. 292 F.2d 794.

in with a lot of artificial restrictions, dreamed up by counsel on the other side, whereby we are not given an opportunity to tell this jury what this lawsuit is about.' "

Respondent contends that he did not take the position that the court had no right to divide issues "under Rule 21," but that the issue the court proposed to segregate for trial was irrelevant. This position of respondent is supported by Radiant Burners v. Peoples Gas Light & Coke Co., 364 U.S. 656, 660, 81 S.Ct. 365, 5 L.Ed.2d 358. In fact, Judge Miner, at the end of the case, seems to have conceded that McConnell was not arguing the power of the court to separate legitimate issues for trial, when the judge said:

> " * * * Plaintiff opposed the separation on legal grounds, arguing that it was unnecessary for plaintiff to prove public injury as such; * * * "

Nevertheless the court then said that he had read the briefs and the pleadings and that plaintiff made a specific allegation of public injury, which the defendants denied, and hence it was prerequisite that it be established.

We find it most difficult, if not impossible, to read into anything referred to in specification 5 any contumacious conduct by respondent. While no defense attorney had made a suggestion or motion for separation of the issue of public injury for trial, the court had indicated that from reading the briefs and pleadings, the defendants had made a special denial of public injury and "that makes a prerequisite its establishment before we can go on with the others, the right to recover." In view of the correct contention of respondent that public injury was not a relevant issue, it is evident from the charge in specification 5 that respondent was referring to the arguments in the briefs and pleadings of defendants and that he had substantial basis for the language which he used, in view of the Supreme Court holding in Radiant Burners, supra, as well as Radovich v. National Football League, 352

U.S. 445, 453, 77 S.Ct. 390, 1 L.Ed.2d 456.

We hold that, on the record before this court, specification 5 does not validly charge respondent with contempt of court.

■ Specification 6 reads as follows:

"On April 27, 1960, in the presence and hearing of the jury, after the Court had instructed the attorneys for plaintiff to refrain from repeatedly asking questions on subjects which the Court had ruled was not admissible, in the presence of the jury as distinguished from an offer of proof outside the presence of the jury, the following occurred:

" 'By Mr. McConnell: Now you are trying to tell us we can't ask these questions. We have a right to ask these questions, and until we are stopped from asking these questions we are going to ask them, because it is in our prerogative in doing it.

" 'By the Court: I am now stopping you from asking the questions about conversations with Mr. Cross, because I have ruled specifically, definitely and completely that it is not an issue in this case.

" 'By Mr. McConnell: We have a right to ask them.

" 'By the Court: You can offer proof on it.

" 'By Mr. McConnell: We have a right to ask questions which we offer on this issue, and Your Honor can sustain their objection to them. We don't have a right to read the answers, but we have a right to ask the questions, and we propose to do so unless some bailiff stops us.' "

As indicated in our opinion in No. 13160, the case of Parmelee v. Keeshin et al., was on trial before court and jury when respondent proposed to make offers of proof outside the presence of the jury. Upon defendants' rejection of plaintiff's suggestion, the court ordered the trial to proceed. Respondent stated that the offers would involve proof of

the conspiracy and monopoly issues, which he was advised "will have to be made outside the presence of the jury". The court responded: "That is correct. That is my ruling."

Respondent explained that he was simply laying a basis in the record for an appeal and that he wished to have the record show the offers that he was making.

He attempted to follow the usual procedure, which consists of putting a question to a witness in the presence of the jury and, when an objection is made, an offer of proof is made out of the presence of the jury.[2] Finally the court admitted that this procedure followed by respondent was required by "the cases" as he "read them". However, later the court struck from the record several offers of proof bearing upon the charges of conspiracy and monopoly, for the reason that these charges had nothing to do with the question of public injury.

It is obvious that respondent, although with difficulty, was maintaining his client's position, despite the shift in the court's rulings as to the submission of offers of proof in a jury case. The method that respondent followed is in accord with the long-established practice in Anglo-Saxon courts and this incident emphasizes the great importance of trial court experience for lawyers generally. Ironically, respondent's adherence to what he had learned in this respect in the courts led to his being ordered to jail. Fundamentally there is no adequate substitute in the heat of a contested trial for prior trial experience. Of course in these days, when more money can be made by lawyers outside of courtrooms, the number of experienced trial lawyers is rapidly decreasing. So, to supply a synthetic experience in capsule form to take the place of trial experience, we have rules of court, such as 28 U.S.C.A. Rule 43(c), supra, just as we have vitamin pills as a substitute for meals which always have taken considerable time in preparation as well as in eating. So, now, without trial experience, or the expenditure of time to learn why it is so, the modern lawyer may simply read the rules of civil procedure and practice according to the rule book. If there is any area of trial court practice which is not now covered by the rules, it is probable that a new rule will be promulgated in due time.

We have attempted to reproduce the essence of the turbulence under which respondent was required to act in protecting his client's rights. It is not the purpose of this opinion to decide whether he was correct in his statement of the substantial rights of his client. We are here concerned with the question of whether respondent as an attorney conducted himself properly in an attempt to represent his client. It was his right as well as his duty to firmly and respectfully advance plaintiff's claims and assert its rights. In so doing, he had as much right to be in the courtroom and to act as did the judge. He had a right, when the court ruled that he could not introduce evidence, to make offers of proof thereof, to the end that, in case of an appeal, a proper basis for a review might appear in the record. The presiding judge had a right to punish respondent for any contumacious violation of his duty as a member of the bar in this proceeding. Power to punish for contempt is one which must be used sparingly and only when it is clearly demonstrated that the respondent's conduct is contumacious and tends to bring the administration of justice into disrepute, rather than when his conduct is that of a determined level-headed practitioner who is acting respectfully to the court under considerable pressure in a lengthy and important trial.

18 U.S.C.A. § 401 provides:

"A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

"(1) Misbehavior of any person in its presence or so near thereto

---

2. This procedure is recognized by 28 U.S.C.A. Rule 43(c).

as to obstruct the administration of justice; * * * "

In Ex parte Hudgings, 249 U.S. 378, 383, 39 S.Ct. 337, 339, 63 L.Ed. 656, the court said:

"An obstruction to the performance of judicial duty resulting from an act done in the presence of the court is, then, the characteristic upon which the power to punish for contempt must rest. This being true, it follows that the presence of that element must clearly be shown in every case where the power to punish for contempt is exerted— * * * "

This case was cited with approval in In re Michael, 326 U.S. 224, 228, 66 S.Ct. 78, 90 L.Ed. 30.

In the case at bar the order from which the appeal was taken contains no finding that respondent's conduct tended to obstruct or continued to obstruct the administration of justice, although we do not base our decision on this omission. Rather we think that its absence strongly indicated that the district court could find no support in the record for such a statement. Actually it appears that the specifications upon which the order was based were not made until several weeks after the trial in question had occurred.

As to specification 6, we hold that, with the exception of one statement attributed to respondent, nothing with which he is charged has been supported by proof of contumaciousness or disrespect.

The exception in specification 6, to which we have just referred, charges that respondent said:

" * * * We don't have a right to read the answers, but we have a right to ask the questions, and we propose to do so unless some bailiff stops us."

The whole theory for holding respondent immune from his conduct in representing his client in good faith is satisfied when he is permitted to make a record in a respectful manner in the trial court for use in a court of review. The theory rests on the premise that he needs no further protection than an adequate record and that, if the court infringes his right to make such a record, his redress is in the court of review. His language which we now quote indicates that he did not rely alone upon this protection but that he took the position that he intended to physically defy the court to the point that only a superior physical force called upon by the court could prevent him from proceeding. Even if he was right in his method of making a record and the court was wrong, this threat was inexcusable contumacious conduct. While events did not precipitate a physical clash, respondent made it clear when he uttered these words that he proposed to insist upon pursuing his course of action until stopped by a court bailiff. This proof is enough to support specification 6 and to that extent will require an affirmance of the order from which this appeal has been taken. We shall, however, reduce the punishment thereunder to a fine of $100.

Specification 7 reads:

"Repeatedly during the course of the trial Thomas C. McConnell conducted himself in a contumacious manner by employing a tone of voice and an attitude indicating contempt and defiance of the Court and disregarding admonitions of the Court with respect to his conduct before the jury."

This specification, without citation of any part of the record to support it, is too general to require an answer by respondent or a definitive ruling by this court. If the law were otherwise, we would be required to determine whether the order was justified without being directed to a single fact, word or deed alleged to have been spoken or performed by the accused. As one court said in regard to such a charge:

" * * * The conclusions of the judge, unsupported by specific facts, in a direct contempt proceeding bear no weight whatsoever."

People ex rel. Andrews v. Hassakis, 6 Ill. 2d 463, 129 N.E.2d 9, 11. To the same effect are cases summarized in 154 A.L.R. 1227.

We find nothing cited in a brief filed by the United States attorney in support of the contempt orders which justifies specification 7. In fact, that brief seeks shelter in the argument that, inasmuch as concurrent sentences were imposed on each of several specifications, the upholding of an order on any one is sufficient.

We hold that specification 7 does not constitute contempt as a matter of law since it recites mere conclusions and no facts on which the alleged contempt is based.

■ 2. Respondent contends that fundamental fairness required that Judge Miner disqualify himself from acting in the contempt matter. This, he says, is because Judge Miner considered the alleged contempts as a personal attack upon himself, and, at the same time, he conceded that there was "no emergency about it."

Respondent relies particularly upon Offutt v. United States, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11; In re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942; and Farese v. United States, 1 Cir., 209 F.2d 312, 315, 42 A.L.R.2d 962.

■ It is a general rule that a direct contempt against the court is not sufficient to disqualify a court or a judge thereof. Patterson v. State of Colorado, 205 U.S. 454, 463, 27 S.Ct. 556, 51 L.Ed. 879.

In discussing rule 42(a) [3] the court said in Sacher v. United States, 343 U.S. 1, 11, 72 S.Ct. 451, 456, 96 L.Ed. 717:

"A construction of the Rule is advocated which would deny a judge power summarily to punish a contempt that is personal to himself except, perhaps, at a moment when it is necessary to forestall abortion of the trial. His only recourse, it is said, is to become an accuser or complaining witness in a proceeding before another judge.

"The Rule itself expresses no such limitation, and the contrary inference is almost inescapable. It is almost inevitable that any contempt of a court committed in the presence of the judge during a trial will be an offense against his dignity and authority. At a trial the court is so much the judge and the judge so much the court that the two terms are used interchangeably in countless opinions in this Court and generally in the literature of the law, and contempt of the one is contempt of the other. It cannot be that summary punishment is only for such minor contempts as leave the judge indifferent and may be evaded by adding hectoring, abusive and defiant conduct toward the judge as an individual. Such an interpretation would nullify, in practice, the power it purports to grant."

In Offutt v. United States, supra, the court considered a proceeding growing out of a criminal trial where Offutt was defendant's trial counsel. From the opinion of the Supreme Court the following statement of facts appears, 348 U.S. at page 12, 75 S.Ct. at page 12:

"* * * Almost from the outset, a clash between the presiding judge and petitioner became manifest, which, it is fair to say, colored the course of the trial throughout its 14 days, and with increasing personal overtones. The judge again and again admonished petitioner for what he deemed disregard of rulings and other behavior outside the allowable limits of aggressive advocacy, and warned him of the consequences by way of punishment for contempt which such conduct invited. On the other hand, these interchanges between court and counsel were marked by expressions and revealed an attitude which hardly reflected the restraints of conventional judicial de-

3. 18 U.S.C.A. rule 42(a).

meanor. Such characterization of necessity derives from an abiding impression left from a reading of the entire record.

"At the close of the trial, after the jury had retired for deliberation, the judge, acting under the procedure prescribed by Rule 42(a) of the Federal Rules of Criminal Procedure and involving the authority of Sacher v. United States, 343 U.S. 1 [72 S.Ct. 451, 96 L.Ed. 717], found the petitioner guilty of criminal contempt on the basis of a certificate filed under the Rule, containing 12 findings of 'contumacious, and unethical conduct in open court during the trial,' and ordered him committed for 10 days to the custody of the United States Marshal for the District of Columbia.

"The Court of Appeals found that four of the 12 findings amply supported the commitment, but reduced the punishment from 10 days to 48 hours. It concluded that 'the record does not support the penalty imposed. Appellant's conduct cannot fairly be considered apart from that of the trial judge. Each responded to great provocation from the other. * * * ' "

The court pointed out at page 17 of 348 U.S., at page 15 of 75 S.Ct.:

" * * * The record discloses not a rare flareup, not a show of evanescent irritation—a modicum of quick temper that must be allowed even judges. The record is persuasive that instead of representing the impersonal authority of law, the trial judge permitted himself to become personally embroiled with the petitioner. * * * "

In reversing, the court suggested that the judge who imposed the sentence should invite the assignment of another judge to sit in the second hearing on the charge against the petitioner.

In the present appeal, while what we have said herein has not been in entire approval of the conduct of the district court, we do not find that he was personally involved in controversy with the respondent or that in his rulings leading to the orders appealed from he was actuated by personal enmity toward either of the lawyers held in contempt. Accordingly we do not feel that the Offutt case requires that upon the record before us there should be a remandment for retrial before another judge. Whatever may have been the reasons that caused the trial judge to commit the errors which we have recounted in cases Nos. 13160, 13175 and 13176, the records before us affirmatively rebut any personal enmity harbored by the judge against the two respondents before him.

We, therefore, hold that the district court did not err in failing to refer the questions of contempt to the executive committee for assignment for hearing by another judge.

■ 3. In addition to the specifications aforesaid, the order now under attack contains some prefatory remarks which respondent characterizes as "a diatribe without any support in the record." He refers to this language:

" * * * Both attorneys for the plaintiff herein, embarked upon a course of unprofessional, unethical, intimidating, insulting, defiant, unfair and improper behavior, to foist their will upon the Court and jury and to dominate the course of procedure herein without regard to an honest and impartial administration of justice."

Inasmuch as the court's order must stand or fall on the specifications, the language in the preface is unimportant, unless it supports respondent's contention that it showed the prejudice of the trial judge and that he was "incapable of giving him any kind of a fair hearing on the issue of contempt". We cannot give it such effect. Nor does the court's language in the preface indicate that the order of contempt or the punishment therefor was based upon the conduct described other than in the specifications. In this respect, we are impressed by the

reasoning of the court in MacInnis v. United States, 9 Cir., 191 F.2d 157, 161, certiorari denied 342 U.S. 953, 72 S.Ct. 628, 96 L.Ed. 708:

" * * * The court's remarks addressed to counsel after the verdict had been returned admirably show the poise of the judge and that the sentence was based upon the statements contained in the certificate in their frame of circumstance. The court's reference to the general conduct of counsel throughout the trial does not indicate that either the judgment of contempt or the punishment therefor rests upon such conduct. The court found appellant's statements to be contemptuous and measured the punishment to fit the offense. The court's remarks constitute an explanation of the fact that counsel's conduct other than the contemptuous remarks was such that the contemptuous statements would not be condoned."

In accordance with the reasons which we have stated, the order from which this appeal has been taken is reversed as to respondent Thomas C. McConnell, except as to specification 6 therein only as to which it is affirmed and this cause is remanded to the district court with instructions to vacate the sentence imposed and in lieu thereof to impose a fine of $100 on said specification 6, to be paid by respondent Thomas C. McConnell to the clerk of the district court, pursuant to law.

Order reversed in part and in part affirmed and remanded with instructions.

DUFFY, Circuit Judge (dissenting in part).

I agree with the majority opinion that the convictions under Specifications 5 and 7 should be reversed. I also agree that Judge Miner did not err in failing to ask the Executive Committee to assign another judge to hear the charges of contempt.

I would also reverse as to Specification 6. The majority opinion describes the difficulties the plaintiff's counsel McConnell encountered in trying to preserve his client's rights. The attorneys for plaintiff were driven to a sense of frustration due to the District Court's rulings on offers of proof. Under such circumstances, it is understandable that an attorney might say things which should not have been said. I think that was the situation in the case at bar.

However, the majority opinion does not adequately present the setting in which the McConnell statement was made. He addressed the Court as follows: "We have a right to ask questions which we offer on this issue, and Your Honor can sustain their objection to them. We don't have a right to read the answers, but we have a right to ask the questions, and we propose to do so unless some bailiff stops us." McConnell's statement occurred during the reading of the deposition of Howard E. Simpson, president of the Baltimore & Ohio Railroad. Simpson was a defendant. One of plaintiff's attorneys was reading portions of Simpson's adverse examination to lay the foundation for an offer of proof. The statement made by McConnell was followed almost immediately by a recess. When the court session was resumed, Mr. McConnell complied with the Court's ruling, and did not persist in asking the particular questions.

It might be noted that counsel's vigorous insistence on preserving his client's rights bore fruit, as the trial judge later changed his ruling. Counsel was then permitted to ask questions in the presence of the jury as a condition precedent to the offers of proof made in accordance with Rule 43(c), Federal Rules of Civil Procedure.

Mr. McConnell has had much trial experience. Even under the stress of the exasperating conditions such as he encountered, he should never have threatened to continue asking the questions in view of the Court's rulings, although he felt certain the rulings were incorrect. After the recess, when he had had time to cool down and consider the language

used, he should have apologized to the Court.

Nevertheless, Mr. McConnell did comply with the Court's order. At that point there was no interference with the conduct of the trial. There was no obstruction in the administration of justice. In my view, the conviction for criminal contempt under Specification 6 should also be reversed.