The respondent Robert E. Jibb being without the jurisdiction of the court and therefore not served with the petition and order to show cause, the hearing on the return of the order to show cause was proceeded with against the respondent George E. Stupalsky alone.
The situation which gave rise to the petition to hold the respondent in contempt is substantially this: A bill of complaint supported by affidavit was filed on August 20th, 1934, alleging mismanagement, fraud and insolvency, and praying for the appointment of a receiver for the National Finance Corporation of America. The respondents, Jibb and Stupalsky, were respectively president and vice-president of the defendant corporation. An order to show cause was issued and served, and upon the return thereof, Jibb and Stupalsky jointly made an affidavit on behalf of the corporation which, as appears from the opinion of the court (Panzer v. National Finance Corp., 117 N.J. Eq. 231) moved the court to decline the appointment of a receiver.
It is deemed unnecessary to set forth in detail all of the charges made in the petition and the proof before the court to sustain the same. Suffice it to say that the petitioners, Charles Robinson and Israel Greene, the receivers of National Finance Corporation of America, allege that after the aforementioned bill of complaint for the appointment of a receiver for the company was filed and the appointment of a custodial receiver denied, and pending final hearing on the bill of complaint, a supplemental bill of complaint was filed on November 26th, 1935, whereupon the petitioners were appointed as receivers.
Entering upon the duties of their office, petitioners charge that assets of more than $300,000 which existed at the time the original order to show cause was dismissed, had been dissipated with the exception of an interest in an equity resulting from the discount of the company's small loans (in which small loan business it was engaged), leaving practically no assets. Further, the petitioners allege that the records, books and minutes of the company upon examination by them *Page 533 
revealed the fact that material statements made in the answering affidavit of respondents were untrue in fact and that such statements were "willfully and corruptly" made to mislead the court, "and impede, hinder and delay the administration of justice."
Specifically, one of the allegations in the original bill of complaint was that the capital of the company was impaired as a result of excessive dividend payments. This charge was met by the respondents in their joint answering affidavit by the statement that "all dividends which have been paid have come out of the surplus or net earnings of the company and never out of capital or the appropriated surplus." The evidence shows that this statement was untrue to the knowledge of respondents, and that dividends, as a matter of fact, had been paid out of capital. The corporate minutes of the company show that its capital was reduced in order to avoid further impairment of capital.
Another allegation in the original bill of complaint was that Jibb and Stupalsky sold on subscription contracts and for cash, more than $1,000,000 face value of National's securities to the public through companies in which the respondents were financially interested in violation of their fiduciary duties as officers and directors, and that respondents profited by participating in commissions paid as a result of such sales. This, respondents denied in their affidavit thus: "Since 1932, the company's selling agency has been a wholly-owned subsidiary of National Finance Corporation and all net profits from the sale of securities have inured to the parent company. * * * The general charge of misconduct on the part of myself, or any other officer or director of National Finance Corporation, is, of course, denied." This statement was likewise untrue. Both respondents received undisclosed profits by way of commissions on sales of securities.
Again, in answer to the allegation in the bill of complaint of mismanagement and misconduct, the answering affidavit stated that "those who compose the management, have never improperly withdrawn any sums from the corporation." Yet the proof shows that one A.J. Shapiro was indebted to the *Page 534 
respondent Stupalsky in the sum of approximately $2,000 as a result of losses sustained in a joint venture in stock speculations. Shapiro gave Stupalsky his promissory note evidencing this indebtedness, which note Stupalsky sold to the National Finance Corporation thus obtaining the money due him from Shapiro at a time shortly prior to the filing of a petition in bankruptcy by Shapiro, and at a time when he undoubtedly knew of his financial embarrassment. Also the financial statements attached to the answering affidavit of respondents showing the value of "stocks, bonds and investments" was with respect to value of certain such stocks untrue. In these and other respects the joint affidavit of the respondents contain statements which were untrue and known to be untrue by the respondent Stupalsky and were willfully and corruptly made for the purpose of misleading the court and to impede, hinder and delay the administration of justice.
The gravamen of the offense charged and proved lies not in perjury only, but more particularly in that as a result of the reliance placed by the court upon the sworn statements contained in the answering affidavit, and now on this hearing in the respects mentioned found not to be true, the court was imposed upon and induced to decline the appointment of a receiver, and to deny the rights and remedies sought to be invoked by the complainants (stockholders and bondholders).
The solicitor for the respondent Stupalsky moved the court to dismiss the petition upon the ground that the respondent is entitled to urge as a bar the analogous application of the statute of limitations, since more than two years have elapsed between the filing of the affidavit and the commencement of this proceeding.
The motion is based upon the statute (2 Comp. Stat. 1910 p.1870 § 152) which provides:
"No person or persons shall be prosecuted, tried or punished * * * unless the indictment shall be found within two years from the time of committing the offense or incurring the fine or forfeiture; * * *."
The statute has no application to the present proceedings. Perjury in reality constitutes when committed in court, two *Page 535 
offenses, one against the state, and the other against the court and its dignity. Edwards v. Edwards, 87 N.J. Eq. 546; Sachs
v. High Clothing Co., 90 N.J. Eq. 545. The perjurious statements by which the court was deceived in the instant case having been proven, the court would be remiss in its duty if it failed to punish such perjury as a contempt. Backer v. A.B. B. Realty Co., 107 N.J. Eq. 246.
"The fact that an act constituting a contempt is also criminal, and is punishable by indictment or other method of criminal prosecution, does not take away the power of the court of whose authority it was a contempt to punish it as such."6 R.C.L. 516. And, "a court has power to punish an act which is a contempt notwithstanding such act may likewise be punished by indictment." 13 Corp. Jur. 55 § 77.
The power of the court to commit and punish for contempt is inherent and essential to the execution of its powers and to the maintenance of its dignity and authority, and should be exercised when necessary in the interest of justice.
A criminal contempt must of course, be proven by clear and convincing testimony. Larkin v. Local No. 560, c., 103 N.J. Eq. 195.
But it is sufficient if the act be one tending to obstruct the administration of justice and an unlawful interference with the subject-matter of litigation. In reSinger, 105 N.J. Eq. 220; Ivens v. Empire Floor and Wall TileCo., 119 N.J. Eq. 273. The court of chancery has jurisdiction to punish one as for a contempt who attempts to improperly influence the court in the due administration of justice. Seastream v.New Jersey Exhibition Co., 69 N.J. Eq. 15; affirmed, 72 N.J. Eq. 377.
I find the respondent George E. Stupalsky guilty of contempt. Respondent and his counsel will be notified of the time and place to be hereafter fixed for the imposition of sentence. *Page 536