85 N.J. Super. 92 (1964)
204 A.2d 13
HARBOR TANK STORAGE CO., INC. DEBTOR BY JOSEPH M. NOLAN, ESQ. TRUSTEE UNDER CHAPTER X OF THE BANKRUPTCY ACT, PLAINTIFF-RESPONDENT,
v.
ANTHONY DeANGELIS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 14, 1964.
Decided October 9, 1964.
*94 Before Judges GAULKIN, FOLEY and COLLESTER.
Mr. Walter D. Van Riper argued the cause for appellant (Messrs. Van Riper & Belmont, attorneys).
Mr. Joseph M. Nolan argued the cause for respondent.
The opinion of the court was delivered by GAULKIN, S.J.A.D.
On February 27, 1964 Anthony DeAngelis (hereafter DeAngelis) was convicted of criminal contempt and sentenced to four months imprisonment. He appeals.
The conviction arose out of the following facts. Plaintiff (hereafter Harbor Tank) instituted an action against Allied Crude Vegetable Oil & Refining Corporation (hereafter Allied) and DeAngelis (president of Allied) for over 40 million dollars upon grounds which entitled Harbor Tank to a capias ad respondendum against DeAngelis. The capias issued and he was arrested. Bail was fixed in the amount of Harbor Tank's claim but later was reduced to $150,000. We were advised at oral argument that he did not post the reduced bail and that he remained in jail until after the acceptance of the *95 assignment, made pursuant to N.J.S. 2A:20-1 et seq., discussed hereafter.
We were told that when the trial judge fixed bail at $150,000 he stated that he would change the amount if DeAngelis testified about his assets and the testimony satisfied him that the bail should be modified. January 20, 1964 was fixed as the date on which DeAngelis was to testify. However, on that date DeAngelis' attorney did not ask for a reduction of the bail. Instead, he told the judge that DeAngelis had executed an assignment of all of his assets, allegedly complete in all respects except for the name of the assignee and sufficient to entitle DeAngelis to release without posting bail, under said N.J.S. 2A:20-1 et seq. The attorney stated that DeAngelis was ready to deliver the assignment to any assignee named by the court but that the federal bankruptcy court (which is liquidating the assets of Allied) had enjoined DeAngelis from transferring any of his assets. The attorney concluded "We will have to apply to Referee Tallyn for some modification of his order * * *."
Mr. Nolan, trustee for Harbor Tank, objected to any delay. He said:
"What we are here this morning for is the problem of bail and the terms under which you set it, and I think we should proceed with Mr. DeAngelis on the witness stand, which was what we agreed to. This has no relevancy here. This restrains him from transferring any assets. We don't know what assets he has. Your problem was to determine from the testimony of the witness as to what assets he may have so that you might be in a better position to determine the amount of bail. That's what I understood your order to be under 4:66."
After some further colloquy, DeAngelis was directed to take the stand. Part of his testimony on direct examination by his attorney was as follows:
"Q. Now has this list [annexed to the assignment] which you just testified to  does that cover your assets?
A. To the best of my knowledge, Mr. Van Riper, having compiled it over the weekend I would say yes.
*96 Q. And you have signed and executed an assignment, have you not, indicating your willingness, and in fact actually assigning, if it becomes effective, all your assets, whatever they might be, wherever they might be to an assignee designated by the Court.
A. Yes, gladly.

* * * * * * * *."
On cross-examination he testified:
"Q. How many personal accounts do you maintain?
A. One.
Q. One?
A. One, in the First National Bank of North Bergen, New Jersey.
Q. And did you maintain that account in 1963?
A. Yes.
Q. And did you only maintain that one account in 1962?
A. Yes.
Q. And did you only maintain that one account in 1961?
A. Yes.

* * * * * * * *
Q. Did you ever open up a bank account under an assumed name?
A. Never.
Q. Did you ever open up a bank account in any other country besides the U.S.A.?
A. No.
Q. Did you ever have someone else open up a bank account for you in any other country?
A. Never.
Q. Did you ever instruct anyone to open up a bank account in their name for you?
A. Never.
Q. In any other country?
A. Never."
We understand that after DeAngelis testified the hearing was adjourned to January 21 and he was remanded to jail.
On January 21 his attorney presented to the judge an order of Referee Tallyn permitting an assignment under N.J.S. 2A:20-1 et seq. DeAngelis then was questioned about items, not pertinent here, set forth in the schedule attached to the assignment. At the conclusion of the interrogation the judge announced that the assignment would be accepted, and he named James A. Hession as assignee and ordered the release of DeAngelis pursuant to N.J.S. 2A:20-1 et seq. When Mr. Nolan protested, saying that he did not believe the schedule set forth all of defendant's assets, the judge replied:
*97 "Well, Mr. Nolan, I am depending on the fact that this assignment which has been executed to Mr. Hession is without condition and is not limited to the schedule which is attached thereto. This, to my mind, satisfies the statutory requirement. As far as the testimony is concerned, that all had to do with the reduction of bail. Bail is unnecessary now in view of the assignment. The standards are different. As I indicated before, if this defendant should secrete or withhold any of his assets from the assignee, he will have to be called before this Bar and answer for it. And you will have, with the assignee, all the rights that you have of investigation and interrogation which you had in this courtroom, only with respect to the assignment."
On February 18, 1964 Mr. Nolan reported to the court, by affidavit, that in testimony given before Referee Tallyn on February 17 DeAngelis had revealed the existence of an account in a bank in Switzerland which contained over $500,000 in cash and securities, over $200,000 of which was in the name of the defendant and all of which was under his control. Transcripts of his testimony of January 20 and before Referee Tallyn on February 17 accompanied the affidavit. The affidavit concluded with the contention that in the hearing held January 20, 1964 defendant had thus "concealed assets and willfully misstated facts about his assets and the existence of the foreign bank account * * *."
Upon this showing, the trial court treated the affidavit and its accompanying papers as a charge of "criminal" contempt against DeAngelis, ordered his arrest, appointed Mr. Nolan to prosecute the charge, and fixed a time and place for a trial of the charge. Cf. New Jersey Dept. of Health v. Roselle, 34 N.J. 331 (1961).
If DeAngelis had "concealed assets and willfully misstated facts about his assets and the existence of the foreign bank account," or given contradictory testimony in the hearings before our court and the referee in bankruptcy, as charged in the affidavit, he could have been proceeded against in ways other than contempt. He could have been indicted for perjury under N.J.S. 2A:131-1 et seq., or for false swearing under N.J.S. 2A:131-4 et seq.
*98 N.J.S. 2A:131-5 provides that, in a prosecution for false swearing:
"If a person has made contrary statements under oath, it shall not be necessary to allege in an indictment or allegation which statement is false but it shall be sufficient to set forth the contradictory statements and allege in the alternative that one or the other is false. * * *;
and N.J.S. 2A:131-6 provides:
"It shall not be necessary to prove, to sustain a charge under this article, that the oath or matter sworn to was material, * * *."
In addition, N.J.S. 2A:20-9 provides that in cases in which a defendant has been released after making an assignment:
"If the creditor at whose suit the debtor is imprisoned or was arrested, or any other creditor, shall in an action brought in a summary manner prove to the satisfaction of the court that the debtor has not fully delivered up to the use of his creditors all of his property, real or personal, or that he has concealed or kept back any part of his property * * * with intent to defraud his creditors, the court shall remand him to prison, there to remain in close confinement until discharged by due course of law. In such an action, the debtor shall have a right to trial by jury." (Emphasis ours)
Since N.J.S. 2A:20-9 has not been mentioned by the parties, we express no opinion as to whether it leaves room for the punishment of an assignor's concealment of assets as contempt.
Since DeAngelis was not proceeded against under any of said statutes, but by "criminal" contempt, the question before us is whether he was properly convicted of that charge.
As Chief Justice Weintraub commented in New Jersey Dept. of Health v. Roselle, supra, 34 N.J., at p. 342, there is "ferment" with respect to when a court should be permitted to punish summarily via contempt. See also Goldfarb, The Contempt Power (1963); United States v. Barnett, 376 U.S. 681, 84 S.Ct. 984, 12 L.Ed.2d 23 (1964). As to the power *99 of the courts to punish false swearing summarily, as contempt, see State v. Illario, 10 N.J. Super. 475, 476-478 (App. Div. 1950), the comment in 21 Calif. L. Rev. 582 (1933) and the cases collected in the annotation in 89 A.L.R.2d 1258 (1963). However, as an intermediate appellate court, we accept it as settled that "In New Jersey the giving of false testimony has been generally considered to constitute a contempt of court punishable as such." State v. Illario, supra, at p. 478; In re Caruba, 139 N.J. Eq. 404 (Ch. 1947), affirmed 140 N.J. Eq. 563 (E. & A. 1947), certiorari denied 335 U.S. 846, 69 S.Ct. 69, 93 L.Ed. 396 (1948).
In a contempt proceeding the defendant does not have the right to indictment and trial by jury with their accompanying constitutional and traditional safeguards, and is "subject to the awesome power of the court to deal with [him] in its discretion, summarily and without fixed limit of punishment  a power described by Justice Depue as, at best, `an arbitrary power, and liable to great abuses.'" State v. Illario, supra, at p. 477. Therefore, when the charge of contempt is based solely on alleged false swearing as distinguished from other forms of contempt such as interference with an order of the court, and the sole purpose of the proceeding is to punish the defendant for the false swearing, and not to compel him to do anything, the false swearing may be summarily punished only if "the court has `judicial notice of the falsity,'" or where it is admitted by the contemnor or otherwise appears incontrovertibly. In re Malisse, 66 N.J. Super. 195, 197 (App. Div. 1961). If the judge must weigh evidence to establish the falsity, it is not incontrovertible, even though the evidence is sufficient to prove defendant's guilt beyond a reasonable doubt. Secondly, the false swearing must have obstructed or tended to obstruct the administration of justice in the matter in which the false swearing occurred. It is the obstruction of judicial power which makes it contempt. New Jersey Dept. of Health v. Roselle, supra; In re Caruba, supra; Clark v. United States, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933); Ex Parte Hudgings, 249 U.S. *100 378, 39 S.Ct. 337, 63 L.Ed. 656, 659 (1919). We find that here the evidence does not measure up to either of these standards.
At the trial DeAngelis admitted the existence of the Swiss account, and that about $200,000 of it was in his name and all of it under his control, but he insisted that the cash and securities in the account belonged to Allied. He claimed he had opened and maintained the account in Switzerland in trust for Allied, that it had been used at all times to carry on the business of Allied, and that he had no beneficial interest therein, and he produced witnesses who corroborated his testimony. It is admitted that between the hearing of January 20-21 and the one before Referee Tallyn on February 17, DeAngelis voluntarily turned over all of the money and securities in the account to Allied's trustee in bankruptcy.
DeAngelis admitted he was aware of the Swiss account when he testified on January 20, but he said he believed he was answering truthfully when he answered as he did because he understood that he was being asked only about assets which belonged to him.
The trial judge ruled that it was immaterial whether or not the account belonged to Allied for, if it did, he found as a fact that DeAngelis had concealed its existence because he intended to embezzle it if he could, and that he had disclosed the account to Referee Tallyn after the January 20-21 hearing only because he was afraid the account would be discovered anyway. The court said:
"So, it is not a question for me to decide here as to whose bank account this is. That is not my province. I must decide here as to whether Mr. DeAngelis lied to me when it was said  when it was asked of him whether he had ever instructed anyone to open a bank account for him  for `you' is the word used in the question. And whether regardless of the title of this account the defendant had in mind the account, and whether his withholding of that information was, in fact, perjurious.

* * * * * * * *
It is my conclusion that regardless of who owned the money, the defendant, Anthony DeAngelis, was biding his time to determine for his own satisfaction how this money could best be utilized for his *101 own purposes. And as the web tightened with the hearing on the capias, the persistence of the 21-A proceedings, it was determined that the money should be returned to this country.

* * * * * * * *
It is my conclusion, gentlemen, that at the time that Mr. DeAngelis was asked the question by Mr. Nolan as to whether he had a bank account in any other country, either opened by him or by someone on his behalf for him, that he lied to this Court; that at that time these funds were regarded by Mr. DeAngelis as his own, whether they were or not. And I, therefore, find this defendant to be in contempt of this Court."
There is no need to recount the testimony. Suffice it to say that the evidence justifies the trial judge's conclusion that "regardless of who owned the money, the defendant, Anthony DeAngelis, was biding his time to determine for his own satisfaction how this money could best be utilized for his own purposes," and that "at the time that Mr. DeAngelis was asked the question by Mr. Nolan as to whether he had a bank account in any other country, either opened by him or by someone on his behalf for him, that he lied * * * at that time these funds were regarded by Mr. DeAngelis as his own, whether they were or not * * *." In short, we assume for the purposes of this opinion that a judge properly could find defendant guilty of willful and intentional false swearing, even beyond a reasonable doubt. However, that does not make it incontrovertible, so as to justify summary punishment by way of contempt. Another trier of fact might have found him not guilty upon the same facts, i.e., that DeAngelis did believe he was being asked about his own assets, or that the questions were not explicit enough to require the revelation of assets of Allied. Cf. In re Szczepanik, 37 N.J. 503 (1962).
The court, of course, had the right to inquire about the account, even if it belonged to Allied, and if defendant understood that the questions called for a disclosure of the account he should have divulged its existence. If he did so understand the questions, false answers constituted perjury or false swearing under the statutes cited above, even if the account did belong to Allied and the answers were given only to prevent inquiry about its existence. However, if the funds in the *102 account did belong to Allied, defendant's answers did not obstruct or tend to obstruct the administration of justice in the matter which was before the trial court. Cf. In re Walaska, 3 N.J. Misc. 139, 141, 129 A. 418 (C.P. 1925); In re Gordon, 167 Fed. 239 (D.C.N.Y. 1909).
The prosecutor contends that there were two matters before the trial court on January 20-21: the amount of the bail, under R.R. 4:66-5, and the bona fides of the assignment tendered in lieu of bail.
To begin with, Mr. Nolan's affidavit, which was treated as the complaint upon which DeAngelis was tried, made no mention of bail or of false swearing with reference to bail. It alleged only that "on January 20, 1964, Anthony DeAngelis appeared before this Court for the purpose of stating his assets and assigning them to a Receiver. At that time Anthony DeAngelis filed a statement of assets made under oath allegedly disclosing all of his assets." Therefore, this is the only charge defendant was called upon to meet and the only one upon which he could be convicted. Cf. New Jersey Board of Health v. Roselle, supra. Secondly, the bail had been fixed at $150,000 before DeAngelis testified, and he did not ask for a reduction on January 20-21 but instead tendered the assignment. He testified on January 20 only because Mr. Nolan demanded his testimony with reference to his bail. The prosecutor argues that if DeAngelis had revealed the Swiss account, bail would have been increased. Even if that be so, we do not see how DeAngelis's avoidance of an increase in bail obstructed or tended to obstruct the administration of justice. The fact is he did not even raise the $150,000 bail and remained in jail until the assignment was accepted.
The concealment, by one who tenders an assignment under N.J.S. 2A:20-1 et seq., of the fact that he possesses or controls assets belonging to others in which he has no beneficial interest does not obstruct the administration of justice for the simple reason that he would not be able to assign those assets even if he revealed them. Therefore, before false swearing by an assignor about particular property may be *103 held to be "criminal" contempt, it must be found as a fact that the assignor had an assignable interest in the property. If he has no such interest in it, he may not be found guilty of criminal contempt, even though he may be tried, convicted and sentenced in the criminal courts for false swearing or perjury.
The trial court declined to rule on the true ownership of the account, and therefore the essential element  that the false swearing obstructed or tended to obstruct the administration of justice in the matter before the court  is missing in this case.
When DeAngelis was being questioned about his assets, if he understood that the questions called for a disclosure of the account, he should have revealed it even if it was not his, so that the trial judge might determine whether or not it was his, and whether his conduct had been "upright" (i.e., whether he had disclosed all of his assets), as required by N.J.S. 2A:20-5. It may be urged that therefore his concealment of the account tended to obstruct justice, even if the account in truth belonged to Allied. As Justice Black said in Matter of Michael, 326 U.S. 224, 227, 66 S.Ct. 78, 80, 90 L.Ed. 30, 33 (1945), "All perjured relevant testimony is at war with justice * * *." However, that does not make all perjured testimony, even if relevant, punishable as contempt. To constitute contempt the false answers must be to questions which, if answered truthfully, would have produced a different result  in the case at bar, more assets for the assignee.
The conviction for criminal contempt is therefore reversed.