204 N.J. Super. 300 (1985)
498 A.2d 793
KERR STEAMSHIP CO., INC., PLAINTIFF,
v.
JOHN D. WESTHOFF, JR., DEFENDANT.
Superior Court of New Jersey, Law Division Camden County.
Decided April 4, 1985.
*302 Michael J. Waldman for plaintiff (Ferrara & Waldman, attorneys).
David S. Rudenstein, for defendant.
WEINBERG, J.S.C.
Defendant John D. Westhoff, Jr., his counsel David Rudenstein and Michael Ferrara, counsel for plaintiff, appeared in court on September 6, 1984 for the purpose of putting the terms of a settlement on the record. The terms as placed upon *303 the record were deemed to be in full settlement of this matter (pending in Superior Court of New Jersey under the above caption) as well as a related action pending in the United States District Court for the Southern District of New York designated as No. 82 Civil 1619-83.
The terms of the proposed settlement were as follows:
1) Defendant John D. Westhoff agreed to pay $55,000 in full settlement of all civil actions pending against him by plaintiff, Kerr Steamship (Kerr);
2) The sums due to plaintiff were to be paid from the proceeds of sale of defendant's residence. A tenancy in common interest with defendant's parents was owned by defendant and his wife as joint tenants. The home in West Berlin, New Jersey was to be listed for sale with a local real estate broker no later than September 10, 1985;
3) Should the $55,000 be paid on or before September 10, 1985, no interest on the said amount would be assessed; however, "in the event the home is not sold by September 10, 1985, interest at the rate of fourteen per cent (14%) begins to accrue and the full amount of principal and interest is due on or before September 10, 1987 ... whether or not the home is sold";
4) Defendant with his wife and parents as owners of the residence were to execute a mortgage and note or bond payable to Kerr and the bonding company, Federal Insurance, Co. (FIC). The documents would incorporate the aforementioned payment and interest requirements and upon recordation would secure plaintiff as a priority creditor, secondary to Westhoff's first mortgage and certain unspecified but minor lienholders;
5) A title search was anticipated to reveal the existence, if any, of other lienholders whose claims would reduce the value of equity in the property. If title were to reveal a value in the property insufficient to secure the settlement, thus materially affecting the agreement, a modification of the settlement would be sought by the parties;
*304 6) Kerr and FIC were to be named as loss payees on the existing homeowner's insurance policy held by Westhoff in the amount of $55,000. Defendant and his counsel indicated that the proposed terms had been fully explained and were completely understood.
In particular this court was sensitive to the rights and obligations of the absent and unrepresented joint owners of the real estate and undertook to clarify and verify defendant's authority to encumber their interests in said property. The following verbatim colloquy not under oath from the transcript of September 6, 1984 will demonstrate the depth and nature of the inquiry:
Mr. Ferrara: The proceeds, in the event there is closing on the home, the proceeds are due to Kerr and Federal even if Mr. Westhoff's share isn't sufficient to pay the money. In other words, he has the obligation at the closing to get the money from his wife or parents or from wherever else. It is not contingent on him getting enough out of his share to pay the amount of money.
Mr. Rudenstein: That's understood.
The Court: Gentlemen, may I pose this question? Has any thought been given to what occurs if his wife and/or his parents refuse to either list the property or execute the documentation that's been set forth to be executed by them?
Mr. Rudenstein: Your Honor, Mr. Westhoff in some forethought has obviously spoken with his wife and his family and he is and I through him am in the position to represent to the Court that they have given him the authority and have okayed this.
The Court: Mr. Westhoff, 
Mr. Westhoff: Yes, Your Honor.
The Court:  you have heard the counsel for Kerr Steamship provide me with the terms of settlement in this case, have you not?
Mr. Westhoff: Yes, I have.
The Court: You have heard your attorney amplify the terms of settlement, have you not?
Mr. Westhoff: Yes, I have.
The Court: Is there anything you did not understand from the comments of either attorney?
Mr. Westhoff: No, there is not.
The Court: Sir, what was your last type of employment position?
Mr. Westhoff: I was head of operations for the East Coast of the United States for Kerr Steamship Company...
The Court: So that you have what one could be accurately described as a business background?

*305 Mr. Westhoff: That's correct, Your Honor.
The Court: And there is nothing that's been set forth in this record by either lawyer today that's not completely understood by you?
Mr. Westhoff: That's correct, Your Honor.
The Court: Do you agree with each and everyone of the terms of settlement?
Mr. Westhoff: Yes, I do, Your Honor.
The Court: Have you spoken to your wife and your parents?
Mr. Westhoff: Yes, I have.
The Court: Regarding their obligations to carry forth certain terms of settlement?
Mr. Westhoff: Yes, I have, Your Honor.
The Court: And they've advised you that they're willing to do so?
Mr. Westhoff: Yes, Your Honor ...
The Court: ... I want to make sure that you're not settling this case with any duress or compulsion or thought that the settlement of this case must necessarily in some way benefit you ...
Mr. Westhoff: It's understood, Your Honor.
The Court: Very well. Do you have any questions?
Mr. Westhoff: No, Your Honor.
Mr. Rudenstein: Your Honor, may I ask one or two questions?
The Court: Surely.
Mr. Rudenstein: ... John, have you been satisfied with my services in this matter?
Mr. Westhoff: Yes, I have.
Mr. Rudenstein: ... And I haven't or anybody hasn't forced or threatened you or made any promises to you to encourage you into this settlement?
Mr. Westhoff: No, I made it of my own free will.
Mr. Ferrara: Judge, I have just one question. Do you have any questions, Mr. Westhoff, of your counsel, of Judge Weinberg or myself in any connection with this agreement?
Mr. Westhoff: None whatsoever. I think it's been spelled out.
The note and mortgage were subsequently submitted to defendant for execution by himself, his wife and parents. Defendant's wife and parents refused to sign the documents and on January 17, 1985, Rudenstein filed a notice of motion seeking an order vacating the entire settlement as recorded on September 6, 1984. Counsel for Kerr filed a notice of cross-motion for an order enforcing the settlement agreement, reducing the same to judgment, and compelling compliance with the agreement.
*306 Accompanying the motion papers was defendant John D. Westhoff's affidavit which specified, in pertinent part, as follows:
Before appearing in court on the said date, I had in fact discussed this matter with my wife and parents who had indicated that they would be willing to sign these certain types of papers so that my share of our house could be effectively transferred to Plaintiff. When I appeared in court on the said date, it is now fully apparent that either I did not understand what my wife and parents were willing to do, or they did not understand what I was asking them to do.
The motion to vacate and the cross-motion to enforce the settlement were heard on February 22, 1985. Waldman appearing on behalf of plaintiff-cross-movant Kerr argued that since both Westhoff and Rudenstein represented to the court that the settlement terms were communicated to the Westhoffs, Sr. (parents of John Westhoff, Jr.) and Marlene Westhoff, (wife of John Westhoff, Jr.) defendant had explained the terms to them and had verified their acceptance of those terms, the settlement should be enforced as to defendant, his wife and parents. Westhoff contested this interpretation of the events surrounding the settlement and resisted the characterization of his authority as an agent on behalf of his parents and wife. He testified after being sworn to tell the truth that he had no authority to enter into any agreement concerning the equity held by his wife in the property. Likewise he denied authority to bind his parents' equity or to act on their behalf in any way. Defendant steadfastly maintained that the settlement agreement was contingent on the results of a title search and that his current inability to consummate the settlement stemmed from a misapprehension of the four co-tenants as to their obligations inter se.
This court is satisfied that the settlement agreement was not contingent upon the results of a title search. Defendant testified that he had not spoken to either his wife or his parents regarding the settlement terms on September 6, 1984. He described them as being inaccessible by phone.
There being a question as to whether Westhoff, Jr. had lied to the court "on the record" during the September 6, 1984 *307 proceeding regarding his having discussed the settlement terms with his parents and wife, the court examined him as follows:
The Court: Mr. Westhoff, I am curious about one thing. The transcript does indicate in response to questions, "Have you spoken to your wife and your parents?" The answer is, "Yes, I have." "Regarding their obligations to carry forth certain terms of settlement?" Did you say that?
The Witness: Your Honor, I think that was a question that was phrased by yourself.
The Court: Did you say that?
The Witness: I think I answered yes to that, Your Honor.
The Court: The answer here is, "Yes, I have, Your Honor." Now, at that time are you telling me now what you said was false?
The Witness: Your Honor, I never spoke to them about the settlement.
The Court: No. Just respond to me, sir. Are you telling me now what you said in court on that day, specifically the portion that I just read to you, is false?
The Witness: I would have to say it's false, Your Honor.
It is therefore incontrovertible that defendant lied to the court on September 6, 1984. In fact, he now admits to lying to the court on that date.[1]
Contempt in the actual presence of a judge may be adjudged summarily by the judge. Contempt of court, R. 1:10-1, may be generally defined as a disobedience to the court by acting in opposition to the authority, justice and dignity thereof. This obviously comprehends conduct which brings into disrepute the administration of the law or otherwise impedes the due administration of justice. 17 C.J.S. Contempt, § 2. Further judicial refinement of the basic principles underlying the contempt power can be found in a quotation which consistently appears in New Jersey case law, to wit:
... any act which is calculated to or tends to embarrass, hinder, impede, frustrate or obstruct the court in the administration of justice; or which is calculated or has the effect of lessening its authority or dignity; or which interferes with or prejudices parties during the course of litigation; or which otherwise tends to bring the authority and administration of the law into *308 disrepute or disregard. In short, any conduct is contemptible which bespeaks of scorn or disdain for a court or it's authority. [In re Callan, 122 N.J.Super 479, 494 (Ch.Div. 1973)]
Under this broad panoply of contempt dwell specifically prohibited classes of conduct which are consistently regarded by the courts as abhorrent and subject to punishment. Among these are: physical assault on the judge or other officer of the court; verbal abuse, Matter of Yengo, 84 N.J. 111 (1980); courtroom disruption, State v. Jones, 105 N.J. Super. 493 (1969); willful violation of a court order, State v. Cary, 49 N.J. 343 (1967); and false swearing, Harbor Tank Storage Co. Inc. v. DeAngelis, 85 N.J. Super. 92 (App.Div. 1964). It is the last of these which we must examine in detail.
Setting aside for a moment the oath requirement of perjury or false swearing proof, there can be no doubt that defendant herein has admitted at least one instance of lying in court.
When a charge of contempt is based solely on alleged false swearing as distinguished from other forms of contempt ... and the sole purpose of the proceeding is to punish the defendant for false swearing ... [it] may be summarily punished only if `the court has judicial notice of the falsity' or where it is admitted by the contemnor or otherwise appears incontrovertibly.
[Harbor Tank Storage v. DeAngelis, supra at 99; emphasis supplied] And "secondly the false swearing must have obstructed or tended to obstruct the administration of justice ... It is the obstruction of judicial power which makes it contempt." Ibid. Defendant John Westhoff, Jr. has out of his own mouth demonstrated the incontrovertibility of the falsity of the in-court statement of September 6, 1984.
The obstructive nature of Westhoff's statement is self-evident. While we are mindful that the power to punish for contempt should be used in only flagrant cases and with the utmost forebearance, In re Bozarth, 38 N.J. Super. 184 (1955); we also adhere to the principle of In re Clawans, 69 N.J. Super. 373 (App.Div. 1961), which states that, although the power to summarily punish for contempt committed in the face of the court is arbitrary in nature and liable to abuse, it "is absolutely essential to the protection of the courts in the discharge of their *309 functions." 69 N.J. Super. at 378-379. We recognize that evidence of what is traditionally accepted as an obstruction of justice may not be readily apparent on these facts; nevertheless, when an act of a party litigant induces the court by deception to do that which it would not have otherwise done, such an act is an obstruction of justice constituting direct contempt. In re Wright's Estate, 165 Ohio St. 15, 133 N.E.2d 350, 357 (Ohio Sup. 1956).
The oath requirement as a necessary proof to a perjury or false-swearing charge need not be an impediment in this summary proceeding for contempt. Whereas the statutory definition of perjury comprehends the intentional making of a false statement under oath and is distinguished from "false swearing" only in that the former additionally requires proof of materiality as to the issues of the litigated matter and is punishable as a third degree crime, N.J.S.A. 2C:28-1, -2, the basis of a contempt charge based on defendant's falsification of evidence in facie curia need not be congruent with separate and distinguishable criminal offenses. While perjury and false swearing may be punished separately as offenses against the State and as offenses against the court and while false swearing alone may support a charge of contempt even though it could not on its facts constitute perjury, contempt may be found wherever and whenever defendant's deliberate and unjustifiable acts offend the court within the intendment of the rules and statute. In re Jibb, 121 N.J. Eq. 531, rev'd on other grounds 123 N.J. Eq. 251 (N.J.Err. & App. 1937); In re Caruba, 139 N.J. Eq. 404, aff'd 140 N.J. Eq. 563 pet. den. 142 N.J. Eq. 358 (Ch.Div.) cert. den. 335 U.S. 846, 69 S.Ct. 69, 93 L.Ed. 396 (1947).
The statute on contempt empowers this court to punish for "misbehavior of any person in the actual presence of the court." N.J.S.A. 2A:10-1(a). Since perjury has been identified as a "misbehavior" within the statutory intent and since the essence of false-swearing and perjury as misbehaviors in *310 this context go to the issue of the deleterious effects of misrepresentation and falsehood on the meaningful functioning of the court, it is determined that the absence of an oath at the moment defendant lied is not material. A litigant cannot be permitted to lie to the court during the formality of placing a settlement "on the record" to achieve his own ends and do so with impunity merely because the formality of an oath-taking wasn't part of the judicial process of placing a settlement "on the record." The judicial service provided to all interested parties of putting settlements "on the record" is to impress upon these same parties the presence and dignity of the court being lent to their agreement as well as the court being satisfied that each term of the settlement is understood and approved. Attending this process is the obligation imposed on all parties to deal forthrightly with the court. Failure in this duty does constitute a misbehavior in the presence of the court. Westhoff has violated this duty.
The actions of John Westhoff, Jr. did hinder and impede the administration of justice in this litigation. He effectively thwarted the court from providing a trial of the issues on September 6, 1984. His lie removed this case from one that was scheduled to commence trial to one which was considered "settled." His actions have diminished the authority of the court and permitted the administration of justice and the orderly process of litigation in accordance with New Jersey court rules to be disregarded.
The court must consider defendant's actions to be a calculated attempt to frustrate its authority in providing justice to all litigants. Defendant's scorn and disdain for the authority of the Superior Court of New Jersey is contemptible. Therefore, John Westhoff, Jr. is determined to be in contempt in facie curia when he lied "on the record" to the court on September 6, 1984.
The court may impose a punishment for contempt in facie curia within the penalty limitations which attach to a *311 petty offense, i.e., imprisonment not in excess of six months or a fine of $1,000 or both. In re Buehrer et al., 50 N.J. 501, 519 (1967). The court will defer the sentencing of John Westhoff, Jr. for two weeks in order that he may have an opportunity of suggesting to the court an alternative method of enforcing the settlement of September 6, 1984 since the court cannot enforce its judgment against his wife and parents. Although this will not purge defendant of his contempt, it will be a consideration since it would partially diminish the frustration of this court in providing the due administration of justice to all litigants. Defendant John Westhoff, Jr. is ordered to appear before this Court at the designated time to await sentence.
NOTES
[1] It is also noted that John Westhoff, Jr. provided this court with false information within paragraph five of his affidavit dated December 17, 1984 and filed in support of his notice of motion to vacate the settlement.