*7RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0403P (6th Cir.)
File Name: 03a0403p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

No. 02-1394

RICARDO ARREDONDO,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 89-20081—Robert H. Cleland, District Judge.

Argued: September 16, 2003

Decided and Filed: November 13, 2003

Before: BOGGS, Chief Judge; and KRUPANSKY and
CLAY, Circuit Judges.

---

### COUNSEL

**ARGUED:** Kevin M. Schad, SCHAD & COOK, Indian Springs, Ohio, for Appellant. James A. Brunson, ASSISTANT UNITED STATES ATTORNEY, Bay City, Michigan, for Appellee. **ON BRIEF:** Kevin M. Schad, SCHAD & COOK, Indian Springs, Ohio, for Appellant.

James A. Brunson, ASSISTANT UNITED STATES ATTORNEY, Bay City, Michigan, for Appellee.

---

### OPINION

---

BOGGS, Chief Judge. The district court held Ricardo Arredondo in criminal contempt of court after finding that he gave fabricated evidence of ineffective assistance of counsel to support his petition for postconviction relief from a federal sentence for drug trafficking. Mr. Arredondo appeals from this contempt conviction and from the district court's accompanying denial of relief from his drug sentence. For the reasons explained below, we reverse the conviction for contempt but affirm the denial of postconviction relief.

I

Arredondo was convicted in 1990 of three counts of distribution of heroin and conspiracy to distribute heroin, and sentenced to 20 years in prison. In 1996, with the assistance of another inmate, he filed a *pro se* petition under 28 U.S.C. § 2255 seeking relief from the sentence. As relevant here, the petition asserted that his appointed attorney, Thomas Plachta, provided constitutionally ineffective representation at sentencing by failing to communicate two alleged government plea offers to Arredondo for approval. Arredondo claims he would have accepted either of the offers if given the chance, and would thereby have obtained a lighter sentence than the one imposed on him. However, he stated, Plachta "never advised [him] of any Plea Offer."

Arredondo's trial judge had fixed a pretrial deadline of August 27, 1990, after which no plea offers could be extended. It is undisputed that Assistant United States Attorney Michael Hluchaniuk made one plea offer to Plachta before this deadline, which would have involved a

recommended sentence of five to ten years, and that Plachta never rejected this offer. The disputed issue regarding this offer is whether Plachta first communicated it to Arredondo for approval.

Arredendo's petition further alleged that Hluchaniuk made a *second* offer of a ten-year sentence to Plachta on the day of trial, and that Plachta also rejected this offer without conveying it to his client. Arredondo supported this allegation with two affidavits. One affiant, Maria Teneyuque, stated that her sister Mary Jane Dietrich (a material witness in Arredondo's trial) had overheard Plachta and Hluchaniuk discussing a plea before the trial. Arredondo also filed his own affidavit testifying that he had seen his lawyer talking with Hluchaniuk on the day of trial, and had seen Plachta shake his head "no."

Both Plachta and Hluchianiuk denied that any second offer was made. Plachta did not squarely deny Arredondo's claim that Plachta had failed to communicate the first offer. Instead, Plachta filed an affidavit stating that he could not specifically remember the events of that day, but that "my practice has always been to communicate any plea offer made by the prosecution to my client regardless of my personal view as to the merits of the offer."

The district court denied Arredondo's Section 2255 petition without an evidentiary hearing. Arredondo then retained a different inmate paralegal to assist him and filed a *pro se* motion for reconsideration of the denial, pursuant to Fed. R. Civ. P. 59(e). This motion was accompanied by a new affidavit from Arredondo that included new allegations: that Arredondo had himself heard some snippets of the alleged plea conversation between Plachta and Hluchaniuk on the day of trial, including a reference to a ten-year sentence. In this affidavit, Arredondo stated that he had seen the prosecutor shake his head "no." The new affidavit also alleged that Plachta "advised" Arredondo "in words" on the day of trial that he had rejected a government plea offer, in tension with

the statement in the earlier affidavit that Plachta had "never advised" him of any offer. However, in the same paragraph of the second affidavit, Arredondo affirmed that Plachta never "made [Arredondo] aware" of a plea offer prior to trial. It is thus fairly clear that by "made aware" Arredondo meant communicating the offer before rejecting it. The district court denied the motion for reconsideration and Arredondo appealed to this court.

We reversed in part and remanded for an evidentiary hearing on the petition. *Arredondo v. United States*, 178 F.3d 778 (6th Cir. 1999). We agreed with the district court that Arredondo was not entitled to a hearing on his allegations concerning the supposed second plea offer.[1] *Id.* at 782-83 & n.3. However, we held that he was entitled to a hearing on the circumstances surrounding the first plea offer. *Id.* at 789.[2]

In closing, we noted that the inconsistent accounts in the affidavits of Plachta, Hluchaniuk, and Arredondo suggested that someone was not telling the truth:

Arredondo has lodged serious claims that attack his attorney's professional competence. If true, his petition deserves our attention. ... If false, Arredondo has

---

[1] We held that the original supporting affidavit accompanying the petition (in which Ms. Teneyuque reported hearing the lawyers discuss a second plea offer on the day of trial) was inadmissible as hearsay and implausible on its face, since the district judge in question had a firm policy of refusing to accept any negotiated pleas after the pretrial cut-off date. We also rejected Arredondo's second affidavit as a possible basis for a hearing, because the conversation supposedly overheard by Arredondo was not newly discovered evidence, and Arredondo had presented no valid reason for failing to include it with his original petition for relief.

[2] We also held that Arredondo should receive a hearing on his other ineffective assistance claim regarding counsel's failure to challenge the drug quantity in the pre-sentence report (PSR). *Arredondo*, 178 F.3d at 789.

lied in a self-interested endeavor that could have caused unwarranted discipline of his attorney. The courts should not encourage such actions by refusing to punish demonstrably false claims of ineffective assistance of counsel.

*Id.* at 790.

The district court held an evidentiary hearing on Arredondo's petition on January 13, 2000. Arredondo repeated in court the allegations of his second affidavit: Plachta had failed to secure his client's permission to reject two plea offers, and Arredondo had personally heard fragments of the discussion concerning the second offer being discussed. Assistant United States Attorney Hluchaniuk again testified that he made one plea offer to Plachta prior to the court deadline, but no second offer. Plachta testified that he did not specifically recall the plea discussions in Arredondo's case, but that it was always his practice to pass on such offers to his clients for approval.

The district court denied Arredondo's Section 2255 petition. It rejected his testimony about the existence of the second plea offer and about Plachta's handling of the first offer.[3] The court went further, ordering a hearing on whether Arredondo had committed criminal contempt of court by knowingly offering false evidence to support his petition.

After briefing and a hearing on the contempt issue, pursuant to Fed. R. Crim. P. 42(a),[4] the court found Arredondo guilty

---

[3]The court also rejected a separate claim of ineffective assistance premised on counsel's failure to challenge the PSR. Arredondo has abandoned this issue on appeal.

[4]At the time of the district court proceedings, the notice-and-hearing procedure used in Arredondo's contempt proceeding was found at Fed. R. Crim. P. 42(b). However, the rule underwent a technical revision on December 1, 2002. The procedure is now found at Fed. R. Crim. P. 42(a).

of criminal contempt and imposed a sentence of six months in prison, consecutive to his prior sentence, and a $3,000 fine. The court found that Arredondo had engaged in a series of fabrications. It noted that Arredondo's story had changed materially from his first affidavit to his second one: after the district court rejected the Teneyuque affidavit as hearsay, Arredondo introduced an assertion that *he* had heard part of the day-of-trial plea discussion, without explaining why this seemingly important fact was not included in his first affidavit. The court concluded that Arredondo's second affidavit had "learned" from the testimony that had come to light, suggesting a deliberate fabrication. The court deemed the affidavit particularly incredible in light of Hluchaniuk's denial of making any second plea offer. It also discounted Arredondo's claim that Plachta failed to pass on the first plea offer. Drawing on its own knowledge of Plachta's "fastidious" work habits, the court found that he had duly passed on the first plea offer to Arredondo, and that Arredondo had simply fabricated his testimony to the contrary.

The district court went on to hold that the fabrications it identified had significantly obstructed the administration of justice, thereby amounting to a contempt of court. It described Arredondo's testimony as involving "egregious," "blatant," and "transparently false" perjuries. It also noted that the perjured allegations of misconduct were integral to Arredondo's Section 2255 petition – the postconviction litigation, which had consumed a significant amount of judicial and public resources, had been founded chiefly on falsehoods. Finally, the court reasoned that Arredondo's false testimony about Plachta had threatened to impose unwarranted professional discipline on an attorney, which also revealed a tendency to obstruct the administration of the justice system.

Arredondo timely appealed from the contempt conviction and the denial of postconviction relief.

## II

We find no basis for disturbing the district court's factual findings that Arredondo willfully fabricated the allegations about Plachta's misconduct in his affidavit and oral testimony. The record plainly supports the finding that Arredondo's statements about the alleged second plea offer were willfully false; indeed, Arredondo has not meaningfully challenged this conclusion. However, Arredondo does contest the finding that he lied about Plachta's failing to pass on the *first* plea offer. While the evidence for this conclusion was controverted, it was sufficient to support the district court's finding. Plachta testified that he always passed on plea offers to clients. He had already represented five to fifteen criminal defendants in federal court at the time of Arredondo's trial, and had undertaken more representations since then. In light of Plachta's experience, his habit testimony was admissible under Fed. R. Evid. 406 to show that he acted in conformity with that habit in this case.[5] We cannot say the district court's decision to credit Plachta's testimony about the first plea offer and its finding that Arredondo willfully fabricated his contrary testimony were clearly erroneous, especially in light of Arredondo's established lack of credibility in other matters such as the second plea offer.

These findings eliminate the factual basis for Arrendondo's claim that his counsel provided ineffective assistance by failing to pass on plea offers to him. Since that is the only ground on which Arredondo has appealed the denial of his

---

[5] *See Perrin v. Anderson*, 784 F.2d 1040 (10th Cir. 1986) (testimony of five prior incidents in which the defendant responded violently to the presence of uniformed police officers, with proffer of three more incidents, sufficed to establish "habit" under Fed. R. Evid. 406); *United States v. Floulis*, 457 F. Supp. 1350, 1355 n.2 (W.D. Pa. 1978) (permitting the INS to prove that defendant had been informed of his right to contact his consulate using evidence of INS's routine office procedures).

---

Section 2255 petition, we affirm the denial of his petition without further discussion.

## III

The remaining question is whether Arredondo's falsifications constituted contempt of court under 18 U.S.C. § 401.

The power to punish contempts is "inherent in all courts," *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 795 (1987) (quotation marks omitted), allowing them to protect themselves against assaults on their authority. However, because this power may be exercised without many of the normal procedural protections of a criminal trial, it is subject to constitutional and statutory limitations. A federal court has the power, codified in 18 U.S.C. §§ 401 and 401(1), to punish "such contempt of its authority, and none other, as [the following:] [m]isbehavior of any person in its presence or so near thereto as to obstruct the administration of justice." This statutory language originated in the federal Act of 1831, and represented a "drastic curtailment of the contempt power" previously recognized. *Bloom v. Illinois*, 391 U.S. 194, 203 (1968).

The narrow category of contempts committed "in the actual presence of the court" may be punished immediately by the judge who saw or heard the offending conduct. Fed. R. Crim. P. 42(b). This summary power is reserved for "exceptional circumstances . . . such as acts threatening the judge or disrupting a hearing or obstructing court proceedings." *Vaughn v. City of Flint*, 752 F.2d 1160, 1167 (6th Cir. 1985). Other contempts, which need only be "in or near"[6] the court's

---

[6] An element of every contempt proceeding under 18 U.S.C. § 401(1) is proof that the alleged contemptuous conduct was "in . . . or . . . near" the presence of the court. *Ibid.*; *see Vaughn*, 752 F.2d at 1167. This element is to be understood "geographical[ly]," as requiring physical proximity to the court's presence. *Nye v. United States*, 313 U.S. 33, 48-

presence, must be adjudicated according to the more developed procedure of Fed. R. Crim. P. 42(a), the procedure followed in this case, which mandates notice and an adversary hearing. Even so, the Rule 42(a) procedure is "pretty summary," *United States v. Oberhellman*, 946 F.2d 50, 52 (7th Cir. 1991), since the offended judge may initiate the proceeding without indictment, may impose sentence on the convicted contemnor, and, in a nonjury case like this one, may try the case himself. For this reason, contempt liability under Rule 42(a) should be "circumscribed as narrowly as is consistent with the maintenance of order and decorum essential to the effective operation of the judicial system." *Id.* at 53.

A witness's misconduct must "obstruc[t] the administration of justice" in order to be punishable as contempt. 18 U.S.C. § 401(1); *Vaughn*, 752 F.2d at 1167. Arredondo's main argument for reversal is that even if he gave knowingly false oral and written testimony in support of his Section 2255 petition, this was legally insufficient under the circumstances here to constitute an obstruction of justice under § 401. We

---

49 (1941) (reversing contempt conviction of petitioners who used liquor to coerce an infirm, elderly man into filing letters in federal district court seeking to dismiss the man's civil action against petitioners' friend; coercive actions took place over 100 miles from the district court). It may be questioned whether Arredondo's filing of false affidavits was sufficiently "near" the district court to be punished as contempt. Our precedents suggest that the answer depends on whether the court was then in session. *See Schmidt v. United States*, 124 F.2d 177, 177 (6th Cir. 1941) (holding that defendant's filing of false papers with clerk could not be punished as contempt, "since it does not appear that the court was in session at the time.").

Neither party has discussed this issue. We need not resolve it, because in the evidentiary hearing that followed our first remand, Arredondo orally repeated in the presence of the court the allegations contained in his written affidavits. We will assume without deciding that Arredondo's affidavits were also given "in or near" the court's presence, because as discussed below, they nevertheless fall outside the scope of contempt liability, as they did not obstruct justice within the meaning of § 401.

---

review this mixed legal and factual question de novo. *See United States v. Baggett*, 342 F.3d 536, 541 (6th Cir. 2003) (applying this standard of review to obstruction of justice enhancement under U.S. Sentencing Guidelines).

Two Supreme Court decisions provide important guidance. In *Ex parte Hudgings*, 249 U.S. 378 (1919), the Court granted a writ of habeas corpus to a federal witness who had been imprisoned for contempt after giving implausible testimony that he could not verify the handwriting of his own business partners. The Court held that "in order to punish perjury in the presence of the court *as a contempt* there must be added to the essential elements of perjury . . . the further element of obstruction to the court in the performance of its duty." *Id.* at 383 (emphasis added). Cautioning against "mistakenly attribut[ing] a necessarily inherent obstructive effect to false swearing," it emphasized the "potentiality of oppression and wrong" that would arise if courts could summarily punish witnesses for giving testimony with which the court disagreed. *Id.* at 384.

The Court reaffirmed *Hudgings* in *In re Michael*, 326 U.S. 224 (1945), upon which Arredondo principally relies. A grand jury subpoenaed Michael, a bankruptcy trustee, to testify about numerous checks that had been written from the bankrupt's assets. He gave direct, unequivocal responses to questions before the grand jury, but the district court found that his answers were lies.[7] The lower courts held Michael guilty of contempt, reasoning that he had "block[ed] the inquiry" of the grand jury by giving false testimony about the purposes of the checks. *Id.* at 229. The Supreme Court

---

[7]Indeed, the facts given by the Supreme Court and in the lower court's opinion, 146 F.2d 627 (3d Cir. 1944), suggest that Michael's falsifications may have been self-serving. The grand jury summoned him in the course of "a general investigation of frauds against the United States." *Michael*, 326 U.S. at 226. If the bankrupt's assets were being dissipated for improper purposes, then Michael might have faced indictment.

unanimously reversed. It emphasized that the natural tendency of all false testimony is to mislead the finder of fact, but this does not, as such, render it contemptuous:

> All perjured relevant testimony is at war with justice since it may produce a judgment not resting on truth. Therefore it cannot be denied that it tends to defeat the sole ultimate objective of a trial. It need not necessarily, however, obstruct or halt the judicial process. For the function of trial is to sift the truth from a mass of contradictory evidence, and to do so the factfinding tribunal must hear both truthful and false witnesses.

*Id.* at 227-28.

We applied *Michael* in *United States v. Essex*, 407 F.2d 214 (6th Cir. 1969), to reverse the obstruction of justice conviction of a witness who had filed a perjured affidavit. After the trial court disbelieved Essex's written testimony that she had sexual relations with several jurors in the trial of Jimmy Hoffa, *see United States v. Hoffa*, 247 F. Supp. 692 (E.D. Tenn. 1965) (denying Hoffa a new trial), she was prosecuted and convicted under the federal obstruction of justice statute, 18 U.S.C. § 1503. *Essex*, 407 F.2d at 215-16. We noted that §1503 had grown out of the same 1831 act as the federal contempt statute, 18 U.S.C. § 401, and therefore concluded that the dispositive issue was whether Essex's "act of filing a false affidavit . . . constitute[d] a contemptuous act within the meaning of . . . § 1503." *Essex*, 407 F.2d at 217. We held that it did not. *Ibid.*[8]

---

[8] As the Fifth Circuit has observed, it may be questionable whether *Essex* correctly interpreted the scope of 18 U.S.C. § 1503. *See United States v. Griffin*, 589 F.2d 200, 204-06 (5th Cir. 1979). *Essex* used the Supreme Court's § 401 contempt cases to interpret § 1503, *see* 407 F.2d at 217-18, yet the operative provisions of these two statutes are not the same. Section 401(1) prohibits misbehavior that "obstruct[s] the administration of justice." 18 U.S.C. § 401(1); *see also Vaughn*, 752 F.2d at 1168. Section 1503 prohibits, among other kinds of conduct,

*Michael* and *Essex* together make clear that "false testimony alone," whether written or oral, "will not amount to contempt of court." *Ibid.* The government argues that several grounds distinguish Arredondo's conduct from the conduct at issue in *Michael* and *Essex*. Upon consideration, however, we must reject each of these arguments for upholding Arredondo's contempt conviction.

First, the government argues that because Arredondo's false allegations concerned the performance of his attorney in his criminal trial, they obstructed the operation of the justice system in a way that routine perjuries do not. While the government cites no authority for this proposition, the Supreme Court upheld a contempt conviction for false swearing under a somewhat similar theory in *Clark v. United States*, 289 U.S. 1 (1933). Clark was a venire member who lied her way on to the jury with representations that she was unbiased, despite the fact that she was an ally of the defendant who would have voted for an acquittal regardless of the evidence. *Id.* at 8-11. The Supreme Court held that she had "trifled with the court of which she was a part, and made its processes a mockery," which was "contempt, whatever else

---

"corruptly . . . influenc[ing], obstruct[ing], or imped[ing], or endeavor[ing] to influence, obstruct, or impede, the due administration of justice." 18 U.S.C. § 1503(a).

The difference in language suggests that § 1503 may have a broader reach than § 401. Moreover, assigning a wider scope to § 1503 liability raises no procedural or separation of powers concerns, because a violation of § 1503 cannot be punished using the summary contempt mechanisms of Fed. R. Crim. P. 42. *See Griffin*, 589 F.2d at 205-06. Instead, a prosecution must be initiated by indictment and the case must be tried before a new judge. Accordingly, we have "severely limited" *Essex*'s holding in subsequent § 1503 cases. *United States v. Collis*, 128 F.3d 313, 318 (6th Cir. 1997) (upholding § 1503 conviction of prisoner who submitted a fabricated letter attesting to his good character in an attempt to influence his sentencing hearing).

Nevertheless, these criticisms of *Essex* do not extend to the § 401 context. *Essex* remains instructive authority on the scope of contempt liability in this circuit.

it may be besides." *Id.* at 12. However, *Clark* and its progeny, *e.g.*, *In re Brogdon*, 625 F. Supp. 422 (W.D. Ark. 1985) (upholding contempt conviction of juror who lied about his bias and prior knowledge of events at trial), are distinguishable from Arrendondo's case. Jurors and veniremen are officers of the court. Their conduct is governed by a separate section of the federal contempt statute, 18 U.S.C. § 401(2) (prohibiting "misbehavior" by a court officer), as well as the generally applicable contempt provision of 18 U.S.C. § 401(1). Here, Arredondo was only a party, not an officer of the court. *Clark* is also distinguishable from Arredondo's case in that Clark's falsehoods interfered with the machinery of the very trial in which she participated. As the Supreme Court later explained, Clark's perjury "prevent[ed] the . . . formation of a proper judicial tribunal." *Michael*, 326 U.S. at 228. In contrast, while Arredondo's falsehoods could be said to be *about* the "administration of justice," 18 U.S.C. § 401, inasmuch as the subject matter of his testimony and his Section 2255 petition was the supposed ineffective assistance rendered by his counsel in an earlier court proceeding, his falsehoods did not *interfere* with the administration of justice in his Section 2255 proceeding, aside from the necessary obstructive effect exercised by *all* false testimony. As *Michael* makes plain, that is not enough for contempt.

Second, the government seeks to distinguish *Michael* on the ground that Arredondo was not, like Michael, a passive witness called to the stand. Instead, Arredondo gave his false testimony in a postconviction proceeding that he himself had initiated. The government therefore argues that Arredondo's act of filing a Section 2255 petition substantially premised on false accusations suggests a degree of willful interference with the judicial process greater than the typical episode of perjury. We acknowledge the inherent plausibility of this argument. However, it cannot be squared with our decision in *Essex*. After all, Essex submitted her false affidavit in support of Hoffa's motion to secure a retrial. If the court had believed her, it might have ordered a lengthy, costly new

court proceeding that likewise would have been premised on falsehood. Yet we held that Essex's conduct was not "a contemptuous act," and we take the same view of Arredondo's conduct here. *Essex*, 407 F.2d at 218.

Finally, the government suggests that Arredondo's false statements are contemptuous because they were not merely false, but "blatant fabrications." The district court also appears to have taken this view. Courts may indeed punish as contempt testimony that is "a mere sham." *United States v. Appel*, 211 F. 495, 497 (S.D.N.Y. 1913) (L. Hand, J.); *see Hudgings*, 249 U.S. at 383 (approving *Appel*); *Collins v. United States*, 269 F.2d 745 (9th Cir. 1959). A witness's refusal to respond to questions is a classic form of contempt. *United States v. Seavers*, 472 F.2d 607, 611 (6th Cir. 1973). By extension, an answer patently false on its face is equivalent to a refusal to testify and may be similarly punished.[9] However, "this power must not be used to punish perjury." *Appel*, 211 F. at 496. To prevent the exception from swallowing the rule, courts employ a technical distinction: testimony is not a contemptuous sham unless the court can take "judicial notice" of its falsity, *see, e.g.*, *Harbor Tank Storage Co. v. De Angelis*, 204 A.2d 13, 17 (N.J. Super. App. Div. 1964), or, put differently, unless the falsity is apparent without reference to extrinsic evidence in the record. The test is whether "on its mere face, and without inquiry collaterally," the testimony is "not a bona fide effort to answer the questions at all." *Michael*, 326 U.S. at 228-29 (quoting *Appel*, 211 F. at 496).

---

[9]As Judge Hand put it: "It could not be enough for a witness to say he did not remember where he had slept the night before, if he was sane and sober, or that he could not tell whether he had been married more than a week." *Appel*, 211 F. at 495-96; *In re Weiss*, 703 F.2d 653, 663 (2d Cir. 1983) (characterizing such responses as a "middle category of testimonial obduracy" between perjury and refusal to respond). An answer need not be evasive to be punishable. "On Venus" would also be a contemptuous response to the question of a party's whereabouts the night before.

By this standard, Arredondo's testimony, though weak, was not a contemptuous sham. His testimony about Plachta's failure to convey the first plea offer certainly was not false on its face. The district court faced a significant evidentiary conflict about this matter, which it resolved against Arredondo. The question is closer with respect to Arredondo's testimony about Plachta's failure to pass on the (nonexistent) second plea offer. His original affidavit that stated that Arredondo had seen Plachta and Hluchaniuk talking on the day of trial and that Plachta had shaken his head "no." After the court rejected Arredondo's petition, he filed a new affidavit with his motion for reconsideration, to which he added an assertion that he had *overheard* relevant snippets of the supposed plea conversation, and that Hluchaniuk had shaken his head "no." It is hard to see why these significant facts were not included in the original affidavit. The district court correctly noted that Arredondo's oral testimony in the Section 2255 hearing was evasive, and his own statements on this issue cast grave doubt on the truth of his assertions. Nevertheless, the second affidavit (and Arredondo's corresponding oral testimony at the Section 2255 hearing) was not patently false on its face. There were inconsistencies between the two affidavits, which properly influenced the district court's decision to reject Arredondo's claims, but not the sort of blatant contradiction that might permit a contempt finding. *Cf. Collins*, 269 F.2d at 751 (affirming contempt conviction where witness told grand jury three different, contradictory stories about his role in a murder and burglary). Moreover, Arredondo's testimony as to the crucial issue in the case – the handling of the plea offer or offers – does not appear clearly false until placed in the context of the other testimony. If Assistant United States Attorney Hluchaniuk had testified, for example, that he *did* make a second plea offer to Plachta on the day of trial, while Plachta denied it, then the factfinder might have hesitated to hold that Arredondo fabricated his testimony about Plachta's handling of that offer. Since the falsity of Arredondo's testimony cannot be plainly established without invoking the

"testimony of other witnesses," *Michael*, 329 U.S. at 229, his conduct does not fall under the *Appel* exception.

Arredondo's false testimony was harmful. It compelled the expenditure of scarce judicial resources in the district court and in this court to analyze his allegations, and it threatened unwarranted professional discipline of an attorney. It was also self-serving: Arredondo sought to wangle relief from a sentence duly imposed on him for serious drug crimes. We are sympathetic to the district court's view that Arredondo's false testimony had a sufficiently unusual obstructive effect to justify a finding of contempt. Indeed, the district court's decision appears have been guided in part by dicta in our own prior opinion in this case. *See Arredondo*, 177 F.3d at 790 (stating that "courts should not . . . refus[e] to punish demonstrably false claims of ineffective assistance of counsel."). However, after full briefing and argument on the issue, we conclude that contempt liability cannot be imposed in this case, consistently with a fair reading of *Michael* and *Essex*. It remains open for "courts . . . to punish" such false claims by means of a perjury prosecution.

## IV

For the foregoing reasons, Arredondo's conviction for contempt is REVERSED and the denial of his petition for postconviction relief from his sentence is AFFIRMED.